## Olan Mills, Inc., Appellant, *v.* Sharon.

Argued October 2, 1952. Before STERN, STEARNE, JONES, BELL and MUSMANNO, JJ.

*Martin E. Cusick* and *Cyril T. Garvey,* with them *Wiesen, Cusick and Madden,* for appellant.

*Nathan Routman,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, November 18, 1952:

The plaintiff company, which is a Tennessee corporation with main offices in Springfield, Ohio, leased on July 6, 1950, premises in Sharon, Pa., for a period of one and two-thirds months. On July 14, 1950, an employee of the plaintiff corporation was arrested by the Sharon Chief of Police, charged with violating Sharon Ordinance No. 410 which required the payment of $200 per month by all transient retail businesses, and which $200 had not been paid by the plaintiff.*

---

* The pertinent provisions of Ordinance No. 410 provide that: ". . . every person . . . entering into, beginning or desiring to begin a transient retail business . . . in the City of Sharon for the sale of any goods, wares, vehicles, or merchandise whatsoever, . . . shall take out a license for the same from the Mayor."

"Any person, firm or corporation shall be deemed to be a transient retail merchant within. the meaning of this Ordinance, who does not intend to continue in said business for a period of one (1) year from the date of commencement,. an affidavit of which intention may be required by the Mayor and exhibition of a bona fide lease for at least (1) year."

"The amount of such license shall be the sum of two hundred ($200.00) dollars per month or fractional part thereof, to be paid

On July 22, 1950, the plaintiff brought a bill in equity praying for an injunction against the City of Sharon from enforcing the provisions of the involved ordinance, claiming that it was unconstitutional in that it exacts a license fee under the guise of a police regulation. Further, that the license fee is greatly in excess of the cost of enforcing the said ordinance and therefore in effect it imposes a revenue tax rather than a license fee. It claimed also that the arrest was beyond the scope of the ordinance which applies only to the "sale of goods, wares, vehicles or merchandise."

The plaintiff corporation is engaged in the business of catering to the vanity of mankind by reproducing on paper the images of the people who pose before its cameras. These photographic reproductions are then sold to those who contracted to buy them. There can be no doubt that this operation, familiar to the world, constitutes the sale of goods and wares, and therefore comes within the scope of the ordinance here under consideration.

Whether the ordinance in its entirety can be upheld, however, is another question. The spirit behind this municipal legislation is commendable because it is obvious that the ordinance is intended to protect Sharon business people from high pressure competition of transient merchants. To the extent that the ordinance is used as a shield against unreliable fly-by-night operators it is supportable, but to the extent that it becomes a sword against legal and fair competition it is not valid.

The City of Sharon argues that the ordinance represents the exercise of a municipal police power stemming from the Act of 1933, P. L. 927, Sec. 1, 53 PS 12198-

---

to the City Treasurer and said license shall be renewed monthly during the continuance of such transient retail business."

2620, which provides, inter alia: "Every city shall have power, by ordinance, to regulate and license each and every transient wholesale and retail business. . . . The amount of such license shall not exceed two hundred dollars for each month, or fractional part thereof, during which any such sale is continued."

The ordinance, however, on its face does more than regulate; it provides for an assessment of taxes. It does more than license; it collects revenue which is not used or needed in the enforcement of the ordinance, for the record shows that the enforcement of the ordinance imposes no unusual extra expense on the City.

The case of *Haller Baking Co. v. Rochester Borough*, 118 Pa. Superior Ct. 501, dealt with: " 'An ordinance . . . *regulating* taxing, licensing, and prohibiting certain matters, persons, places, and things legally subject thereto' " and provided that peddlers and hawkers could not sell certain merchandise without obtaining a license therefor and paying the license fees set forth in the Ordinance. Commenting on this, the Superior Court said: "An examination of the ordinance does not indicate any provision for supervision or regulation of the licensee. It clearly provides for an assessment of taxes for revenue purposes, and is not an exercise of police power as a means of regulation only, and can not be sustained as such."

The Superior Court held further that for the ordinance to be sustained as an exercise of police power the license fee imposed must not be of such size as to imply that it was enacted for the purpose of providing revenue. In the case before us, $200 per month for a transitory photographic business is obviously disproportionate to whatever expenses might be required to regulate the business in question.

In the case of *American Baseball Club v. Philadelphia*, 312 Pa. 311, this Court, passing upon the validity

of an ordinance which required the payment of a license fee based upon a reasonable estimate of the number of policemen and firemen required to protect the safety of the public at certain contests and exhibitions, said: "The license fee is valid if the amount thereof is reasonably commensurate with the actual cost to the municipality for special services rendered.

". . . A flat fee would tend to be arbitrary and unreasonable; such a fee might be commensurate with the services provided for one person and be wholly unreasonable and oppressive when considered in the light of services rendered another."

In *Flynn v. Horst,* 356 Pa. 20, 51 A. 2d 54, this Court held that ". . . if the amount of a 'license fee' is grossly disproportionate to the sum required to pay the cost of the due regulation of the business the 'license fee' will be struck down. . . . The legislature may not under the guise of protecting the public interests arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations."

The Appellate Court of Illinois, in passing upon a question similar to the one at bar where itinerant merchants were also charged $200 per month, said: "The ordinance clearly shows that its aim and intent was to prevent competition with the city merchants by transient merchants, to the detriment of the public generally. The license fixed by the ordinance is out of all reason too high . . . It could not have been intended for revenue, for very few could or would pay it, and it would be an unreasonable tax and out of all proportion to other taxation."

The license fee is here also "out of all reason too high." While municipal patriotism embraces the protection of hometown trade, it cannot ignore the welfare

of the inhabitants of the municipality who have a right to share in the benefits of any scientific improvements which lower the price of commodities supplied by any business house, permanently or only temporarily in the town. And so long as people find it a necessity to have their images permanently recorded, they are entitled to the protection of government in obtaining that reproduction at the lowest price which honest and fair competition provides.

The costs of the instant litigation should not have been considered by the court below in determining the reasonableness of the license fee to be paid by the plaintiff, for that is tantamount to requiring a party contesting the validity of an ordinance to pay the counsel fees of the opposing parties. The erroneous inclusion of that item as an element of the costs to be covered by the fee in question undoubtedly caused the lower court to fall into error in its finding that the fee imposed by the Ordinance was not disproportionate to the expense incurred by the City in its enforcement. That finding is not supported by the evidence, for a review of the record leads to the irresistable conclusion that the charge established by the Ordinance bears no reasonable relation to the cost of enforcing its provisions.

The lack of regulatory provisions and the excessive fee clearly and unquestionably invalidate the Ordinance as an improper exercise of the police power and stamp it as a mere revenue-raising measure. "If anything can be considered as settled under the decisions of our Pennsylvania courts it is that municipalities under the guise of a police regulation cannot impose a revenue tax:" *Kittanning Boro. v. Am. Natural Gas Co.*, 239 Pa. 210, 86 A. 711.

The decree of the court below dismissing the bill in equity is reversed and the record remanded for the

entry of an appropriate order granting the injunction. Costs to be paid by appellees.