## Olan Mills, Inc., v. Borough of Grove City

*Martin E. Cusick*, for plaintiff.

*David W. Ketler*, for defendants.

McKAY, J., February 4, 1959.—In this case plaintiff filed a complaint in equity to enjoin the enforcement of an ordinance of the Borough of Grove City

which requires transient retail merchants and transient photographers to obtain a license and pay a license fee of $50 per month.

On December 16, 1958, a hearing was held at which testimony was taken. From the evidence adduced at the hearing we make the following

### *Findings of Fact*

(1) Plaintiff, Olan Mills, Inc., is a Tennessee corporation engaged in the business of photography and duly qualified to do business in the Commonwealth of Pennsylvania, its principal office being at 116 East Columbia Street, Springfield, O.

(2) From 1940 to 1958 plaintiff conducted its business in the Borough of Grove City by means of solicitation of customers in the manner hereinafter set forth.

(3) Plaintiff's general conduct of procedure was as follows and in the following order:

(a) During a portion of each year after 1956 a representative of plaintiff company rented an office in the borough, installed telephones and employed young women residing in the borough to call prospective customers from a list of names obtained from the telephone directory and ascertained if such persons were interested in having a photograph taken of members of their family. Prior to 1956 door to door convassers solicited the customers for the same purpose.

(b) An employe of the plaintiff company called upon the interested person and upon receipt of $2 issued a coupon or club contract entitling the bearer to have photographs taken.

(c) An appointment was made by telephone for a sitting for the taking of the photographs which was done at the Travelers Hotel approximately 10 days later upon notice. An additional dollar was paid at the time of the sitting. Still another dollar per person was added for group portraits. A total of three sitting

dates were arranged. Three or four months elapsed between the sitting dates. At the time notice was mailed for the second sitting a certificate was enclosed in the letter from the home office for use by a friend of the customer.

(d) The film was mailed to plaintiff's home office at Springfield, O. for processing.

(e) An employe of plaintiff company called upon the customer showing him the proof and, if the latter desired, took orders for additional prints. At this time an additional $.25 was collected to cover postage, packaging and taxes.

(f) The finished pictures were sent direct to the customer.

(g) The manager of the Travelers Hotel, by arrangement with plaintiff company, took phone calls answering inquiries, but did not make appointments or otherwise represent the company.

(4) On April 19, 1954, the Borough of Grove City enacted Ordinance No. 673, which reads so far as is pertinent as follows:

"An ordinance requiring transient retail merchants and transient photographers to obtain a license from the Burgess of the Borough of Grove City and prescribing a penalty for violation.

"The Borough of Grove City hereby ordains, as follows:

"Section I. Every person, partnership, firm, associates, or corporation, whether principal or agent, entering into or desiring to begin a transient retail business, or the business of a transient photographer, within the Borough of Grove City, shall before starting such business, obtain a license from the Burgess.

"Section II. (a) For the purpose of this ordinance a transient retail merchant shall be one who shall have no fixed or permanent place of business or resi-

dence in the Borough, and who hires a place or occupies any room, apartment, store, building or other structure or place whatever for the exhibition and sale at retail of goods, wares, or merchandise.

"(b) For the purpose of this ordinance a transient photographer shall be any itinerant photographer, picture or view taker, coupon salesman, enlargement work solicitor or canvasser thereof, who shall have no fixed or permanent place of business or residence in the Borough.

"Section III. The fee to be paid for such license shall be fifty dollars ($50.00) for each month or fractional part thereof, and shall be collected by the Burgess before he shall issue any license under the provisions of this ordinance. Such license shall be renewed monthly by the Burgess upon payment of the license fee herein provided.

"Section IV. Nothing contained in this ordinance shall be construed to apply (1) to farmers selling their own produce; (2) to the sale of goods, wares and merchandise donated by the owners thereof, the proceeds whereof are to be applied to any charitable or philanthropic purpose; or (3) to any manufacturer or producer in the sale of bread or bakery products, meat and meat products, or milk or milk products."

(5) During 1957 approximately 200 customers in Grove City and vicinity purchased membership in plaintiff's club plan which entitled them to two or three sittings.

(6) In March 1957, plaintiff paid the borough $50 for a license as required by section 3 of the said ordinance no. 673. In July 1957, the borough officials demanded an additional fee from the plaintiff in the amount of $50 for sittings scheduled for July 17, 1957.

(7) Pursuant to this demand, the plaintiff paid the borough $50 in October 1957.

(8) The borough's procedure for processing license applications was as follows: When any photographer desired a license under the said ordinance he made an application therefor and submitted the names of references, any criminal record and the period for which the license was desired. Thereupon the chief of police investigated the reputation of the applicant by corresponding with the persons named as references or otherwise.

(9) The borough police furnish protection to licensed photographers and inspect their headquarters as a part of their general police duties. No substantial additional expense is incurred in affording this police protection.

(10) The police are also called upon to investigate claims of citizens against various transient merchants or photographers, of which they receive about 24 a year. They have also arrested persons who fail to obtain licenses as required by the ordinance.

(11) Plaintiff has a good business reputation and its licenses were granted in 1957 in a routine manner without question.

(12) The borough purposes to continue to enforce the said ordinance against plaintiff.

## Discussion

The General Borough Act of May 4, 1927, P. L. 519, sec. 2910, as amended, 53 PS §47910, provides, inter alia:

"Every borough shall have power, by ordinance, to regulate and license each and every transient retail business, within such borough, for the sale of goods, wares, or merchandise, and to prohibit the commencement or doing of any such business until or unless the license required by such ordinance has been procured from the proper authorities by the person, firm, or corporation desiring to commence such transient retail

business, and to enforce such ordinances by penalties not exceeding three hundred dollars or by other appropriate means. The amount of any such license shall not exceed two hundred dollars for each month, or fractional part thereof during which any such sale is continued."

A casual reading of ordinance no. 673, however, discloses that while it undertakes to require a license of transient retail businesses within the borough, it does not purport to regulate such businesses. The ordinance fails to contain a single regulation which transient businesses are required to comply with.

It was suggested at the oral argument that the amount of the license fee is used to pay for the cost of investigation, inspection and protection by the borough police department. On the contrary, the evidence discloses that the cost of these items was absorbed in the general police service which the borough furnishes generally.

When any political body undertakes to regulate and license an activity it is required to specify, in the license legislation by appropriate regulations, the conduct expected of the licensee and the cost of the license must bear a reasonable relation to the cost of enforcing those regulations. For example, the State licenses hunters who must comply with The Game Law of June 3, 1937, P. L. 1225. The amount of the license fee is nominal but such fees in the aggregate are sufficient to bear the cost of employing game wardens to enforce the provisions of the law. Similarly, the Commonwealth licenses retail liquor establishments and in the Liquor Code of April 12, 1951, P. L. 90, specifies the requirements which licensees must meet and the regulations with which they must comply. The license fees are used to pay for the cost of the enforcement of the act and they bear a reasonable relation to that cost.

In the present ordinance, however, the license fee is large, $50 per month, the cost of investigation and inspection negligible and there are no regulations whatever to be observed or enforced.

The ordinance, as applied to plaintiff, therefore, is nothing more or less than a tax imposed for revenue purposes. As such, it is unconstitutional and void. It is well established that a revenue tax cannot be constitutionally imposed upon a person or property or business under the guise of a police regulation since such tax amounts to a deprivation of property without due process of law in violation of the Constitutions of the United States and of the Commonwealth.

In the case of Flynn v. Horst, 356 Pa. 20, 32, the court said: "No principle is more firmly established in the law of Pennsylvania than the principle that a revenue tax cannot be constitutionally imposed upon a business under the guise of a police regulation, and that if the amount of a 'license fee' is grossly disproportionate to the sum required to pay the cost of the due regulation of the business the 'license fee' act will be struck down." See also Haller Baking Company v. Rochester Borough, 118 Pa. Superior Ct. 501. Hence, the ordinance before us is unconstitutional.

If there were any doubt about the determination of the instant case, it would be resolved by the fact that the very questions here involved were raised against the present plaintiff in our court in the case of Olan Mills, Inc., v. City of Sharon, no. 3, September term, 1950, in equity. In that case our court sustained the validity of an ordinance essentially identical with the ordinance involved in the instant case. On appeal, however, the Supreme Court reversed and struck down the ordinance as unconstitutional: 371 Pa. 609. In its opinion in that case the court stated, at page 614:

"The lack of regulatory provisions and the excessive

fee clearly and unquestionably invalidate the Ordinance as an improper exercise of the police power and stamp it as a mere revenue raising measure."

The fact that in the Sharon case the fee imposed was $200 per month and in the present case but $50 per month is, in our opinion, immaterial. The present ordinance, as the Sharon ordinance, contains no regulatory provisions and there is no reasonable relation between the amount of the license fee and the cost of enforcement.

It is also unconstitutional for another reason. It purports to apply to transient merchants and transient photographers to the exclusion of local retail merchants and local photographers, imposing a burden on the former from which the latter are exempt.

It is not difficult to understand and have sympathy for resident merchants of a community who rent buildings, employ regular help and pay local taxes but who are required to compete on obviously unfair terms with transients such as peddlers who have no overhead expenses and who solicit business by telephone or from door to door. Nevertheless, competition of this sort may not be eliminated by preferential treatment of the sort afforded by the present ordinance. Ordinances which apply to residents of a municipality but exclude from their operation nonresidents amount to a trade regulation which is discriminatory and hence violative of the Federal and State constitutions which guarantee to all persons the equal protection of the law: Sayre Borough v. Phillips, 148 Pa. 482; Warren Kay Vantine Studio, Inc., v. City of Portsmouth, 95 N. H. 171, 59 A. 2d 475, 7 A. L. R. 2d 423.

### Conclusions of Law

(1) The ordinance of the Borough of Grove City, No. 673, contains no regulations.

(2) The license fee imposed by the ordinance

bears no reasonable relation to the cost of enforcing the ordinance.

(3) The ordinance exempts from its provisions residents of the borough and applies only to transients.

(4) The ordinance therefore violates the Constitution of the United States and the Constitution of Pennsylvania and is void.

### Decree Nisi

Now, February 4, 1959, it is ordered, adjudged and decreed as follows:

That an injunction issue enjoining and restraining the Borough of Grove City, a municipal corporation, its servants, agents, employes and the individual defendants, Rube McCandless, the Burgess of the Borough of Grove City, and John J. Burke, the Chief of Police of the Borough of Grove City, and their respective subordinates from enforcing the provisions of Ordinance No. 673 of the Borough of Grove City, relating to the licensing of transient photographers, so far as the same relates to the business, activities and conduct of plaintiff, its servants, agents and employes, in and about the Borough of Grove City.

It is further ordered that unless exceptions are filed to this decree within 20 days from the notice of the filing of the same, the said decree shall become final.