### MUNICIPAL AUTHORITY OF the BOROUGH OF MIDLAND

### v.

### OHIOVILLE BOROUGH MUNICIPAL AUTHORITY, Appellant.

Commonwealth Court of Pennsylvania.

Argued Nov. 10, 2014.
Decided Jan. 6, 2015.

Paul A. Steff, Beaver, for appellant.

Myron R. Sainovich, Beaver, for appellee.

BEFORE: BONNIE BRIGANCE LEADBETTER, Judge, and PATRICIA A. McCULLOUGH, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge LEADBETTER.

Ohioville Borough Municipal Authority (Ohioville) appeals from the order of the Court of Common Pleas of Beaver County (trial court) that entered a judgment in favor of the Municipal Authority of the Borough of Midland (Midland) and against Ohioville in Midland's action involving a dispute over the amount of a water bill that Ohioville was obligated to pay Midland. Ohioville argues that the trial court (1) improperly considered the evidence taken at a hearing in deciding the motion for judgment on the pleadings, (2) failed to submit the dispute to compulsory arbitration pursuant to the local rules and did not have authority to enter the judgment, and (3) should have construed the ambiguous language in Midland's water rate increase notice against Midland under the construction rule of *contra proferentem*. We affirm.

The following relevant facts are undisputed. Since 1964, Ohioville purchased potable water from Midland and distributed it to Ohioville's customers. After the written contract between Midland and Ohioville expired in 2004, Midland continued to provide water to Ohioville. In a letter dated April 14, 2009, Midland notified its customers, including Ohioville, that the monthly water rate would be increased from $22.90 to $41.90 per 1000 cubic feet "[e]ffective with the July 1, 2009 billing." Exhibit A to the Complaint; Reproduced Record (R.R.) at 9. In a water bill dated

June 30, 2009, Midland charged Ohioville $30,125.33 at the increased water rate. Ohioville paid only $16,074.52 and paid all subsequent bills at the increased rate.

In October 2011, Midland filed a complaint against Ohioville seeking a judgment in the amount of $14,050.81, the remaining balance on the June 30, 2009 bill, plus interest and costs. Midland based the claim on a breach of contract implied in fact (Count I) and unjust enrichment (Count II). Ohioville filed an answer and new matter, alleging that the water provided by Midland before July 1, 2009 was not subject to the water rate increase. Midland filed a reply to the new matter and served a first set of interrogatories upon Ohioville. Ohioville then served a request for admissions upon Midland.

Ohioville subsequently filed a motion for judgment on the pleadings, alleging that "there are no material facts in dispute such that a trial by jury would be unnecessary." Motion for Judgment on the Pleadings, ¶ 16; Certified Record (C.R.) Item No. 10. After argument, the trial court denied Ohioville's motion, stating that the language in the April 14, 2009 water rate increase notice "is not clear and unambiguous." Trial Court's August 6, 2013 Order; R.R. at 43. Ohioville filed a motion for reconsideration, arguing that the ambiguous language in the rate increase notice should be construed against Midland under the construction rule of *contra proferentem*. On September 20, 2013, the trial court granted the motion for reconsideration and scheduled a hearing for October 30, 2013.[1]

Ohioville did not dispute its obligation to pay for the water provided by Midland, nor challenge Midland's right to increase the water rate. Ohioville also admitted that it did not pay the remaining balance of $14,050.81 on the June 30, 2009 water bill. Ohioville's Answer and New Matter, ¶ 7; R.R. at 14. The only dispute to be resolved by the trial court was whether Ohioville was obligated to pay the June 30, 2009 water bill at the increased rate under the language "[e]ffective with the July 1, 2009 billing" in the rate increase notice.

At the hearing, both Midland and Ohioville presented exhibits and the testimony of witnesses. Ohioville's evidence showed that it construed the language "[e]ffective with the July 1, 2009 billing" in the rate increase notice to mean that the rate increase would take effect on July 1, 2009 and would not apply to water usage in June 2009. On June 9, 2009, Ohioville's Board of Directors approved a water rate increase for Ohioville's customers "[e]ffective July 1, 2009." R.R. at 54. Ohioville's solicitor sent Midland a letter, stating that "[d]ue to an apparent clerical error," the bill for the June water usage was calculated at the increased rate. R.R. at 51.[2] Midland, on the other hand, interpreted the "July 1 billing" to mean the bill that was issued on or about July 1 for the June usage. Its witness testified: "[T]he June ... usage is what is ... in that July 1st billing.... [O]ur customers understand that the first of each month is when their billing comes out, and that's why it was phrased the way it was." R.R. at 65–66.

---

1. It is unclear why the trial court *granted* the motion to reconsider its *denial* of judgment on the pleadings while at the same time ordering a hearing to resolve the only disputed issue in the case, i.e., the interpretation of the term "July 1 billing." Nonetheless, both parties appeared prepared to present their evidence on the issue, and did so.

2. In making a payment on the bill dated February 13, 2013, Ohioville inadvertently paid the balance remaining on the June 30, 2009 bill, $14,050.81, and then deducted that amount in making a payment on the next month's bill. Trial Court's Memorandum & Order, Findings of Fact Nos. 19–20.

The trial court found that the parties "agreed that the prior practice of billing by [Midland] was retroactively for the prior month's usage and that all billing was sent at the end of the month." Trial Court's Memorandum & Order, Finding of Fact No. 7. The court stated that "[t]he routine practice of [Midland] to bill for the prior month's usage ha[d] been proven to demonstrate the routine practice of billing retroactively." Trial Court's Memorandum & Order at 5. The court directed the prothonotary to enter a judgment in the amount of $14,050.81 in favor of Midland and against Ohioville. After the court denied its motion for reconsideration/post-trial relief, Ohioville appealed the judgment to this Court.

■ Ohioville first argues that in deciding the motion for judgment on the pleadings, the trial court failed to confine its consideration to the pleadings and the relevant documents attached thereto and improperly considered the evidence taken at the hearing.

■ Any party may move for a judgment on the pleadings after relevant pleadings are closed but within such time as not to unreasonably delay the trial. Rule 1034(a) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 1034(a). In ruling on a motion for judgment on the pleadings, the court may consider only the pleadings [3] and any documents properly attached thereto and must accept as true all allegations of the non-moving party. *Pfister v. City of Phila.*, 963 A.2d 593, 597 (Pa.Cmwlth.2009). A motion for judgment on the pleadings may be granted where there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. *Parish v. Horn*, 768 A.2d 1214, 1215 n. 1 (Pa.Cmwlth.2001), *aff'd*, 569 Pa. 45, 800 A.2d 294 (Pa.2002). There is no doubt that Ohioville is correct in stating that it would be error for the trial court to grant either judgment on the pleadings or summary judgment [4] based on evidence presented and facts determined at a hearing. However, the trial court did not order judgment on the pleadings, but rather, after hearing the parties' evidence on the only disputed issue, granted judgment in favor of Midland.

At the conclusion of its argument concerning the proper scope of judgment on the pleadings, Ohioville adds one sentence stating that it lacked "notice of the extent or scope of [the] Hearing, ... with the consequence of denying the parties their right to have the issue heard through the Compulsory Arbitration process." Ohioville's Brief at 18. Even assuming that this entirely undeveloped argument asserts a claim that it was denied due process [5] because it lacked adequate notice of the purpose of the hearing, this argument lacks merit.

■ It is well established that "[i]n order to preserve an issue for appeal, a

---

**3.** Under Rule 1017(a), Pa. R.C.P. No. 1017(a), "pleadings" are limited to a complaint, an answer, a reply, a counter-reply, a preliminary objection, and a response to preliminary objection.

**4.** A motion for summary judgment under Rules 1035.1 through 1035.5, Pa. R.C.P. Nos. 1035.1–1035.5, also allows a summary disposition of a case where pleadings may be sufficient to withstand a demurrer on their face, but there is no genuine issue of fact that can

be conclusively shown through discovery. *Bensalem Twp. Sch. Dist. v. Commonwealth*, 518 Pa. 581, 544 A.2d 1318, 1321 (1988). A motion for judgment on the pleadings and a motion for summary judgment supplement each other. *Id.*

**5.** To the extent that this sentence is interpreted to mean that it was denied the opportunity to participate in compulsory arbitration, this argument is dealt with below.

litigant must make a timely, specific objection at trial *and* must raise the issue on post-trial motions." *Dennis v. Se. Pa. Transp. Auth.*, 833 A.2d 348, 352 (Pa. Cmwlth.2003) (emphasis added). Issues not preserved for appellate review cannot be considered by this Court, even if the alleged error involves "a basic or fundamental error." *Id.*

Ohioville did not object to the court's decision to schedule a hearing. At the beginning of the hearing held more than a month later, Midland's counsel stated: "[I]n reviewing the Court's Order of September the 20th, the motion for reconsideration was granted, and we are here today only on the issue of the ambiguity of the correspondence of April the 14th." N.T. at 4; R.R. at 60. The court replied: "That's correct." *Id.* Ohioville did not object to the hearing and proceeded to fully litigate the proper interpretation of the language in question by presenting the testimony of its witness and exhibits concerning the only issue in dispute. Only after the court entered the judgment against it and in favor of Midland, did Ohioville allege for the first time that the court violated its due process rights by failing to inform the parties that the hearing "was to be full and final, non-jury trial," and that the court improperly considered the evidence presented at the hearing to decide the motion for judgment on the pleadings. Ohioville's Motion for Reconsideration/Post–Trial Relief, ¶¶ 13–18; C.R. Item No. 23. Because Ohioville

failed to timely raise its objection at any time before the entry of the judgment, Ohioville waived the issue and cannot raise it on appeal.

Moreover, Ohioville has not asserted that it had any evidence which it did not fully present at the hearing, nor any other manner in which it might have been prejudiced by the trial court's procedure. There was no jury demand and so Ohioville obtained all it was entitled to: a determination by the trial judge following full presentation of evidence by both parties on the single dispositive issue. We can discern no sound reason to remand to the trial court to repeat that which it has already done.

■ Ohioville next argues that the trial court failed to first submit the action to compulsory arbitration pursuant to the local rules and did not have authority to enter the judgment. Under the "judicial arbitration" provision of Section 7361(a) and (b) of the Judicial Code, *as amended*, 42 Pa.C.S. § 7361(a) and (b), civil matters or issues must first be submitted to arbitration before a board of three members of the bar "when prescribed by general rule or rule of court," except matters involving title to real property or matters involving an amount in controversy exceeding $50,000, exclusive of interest and costs.[6] Any party to an action has the right to appeal a compulsory arbitration award to the court for a *de novo* trial. Section 7361(d) of the Judicial Code.[7] Compulsory

6. Chapter 73 of the Judicial Code, 42 Pa.C.S. §§ 7301–7362, provides for three types of arbitration: (1) statutory arbitration subject to the Uniform Arbitration Act, 42 Pa.C.S. §§ 7301–7320, (2) common law arbitration and (3) judicial arbitration.

7. Rules 1301 through 1314, Pa. R.C.P. Nos. 1301–1314, govern "actions which are submitted to compulsory arbitration pursuant to local rule under Section 7361 of the Judicial

Code...." Rule 1301. Under Rule 1301A.1 of the Beaver County Rules of Civil Procedure, Beaver Cty. L.R. 1301A.1, all civil actions for money damages "shall be submitted to compulsory arbitration" where the amount of controversy is $25,000 or less, exclusive of interest and costs, as determined from the pleadings, by agreement of the parties or by the court, unless they fall within certain exceptions. The court administrator is required to schedule an arbitration hearing upon the

arbitration provides the parties with an expeditious and inexpensive procedural alternative to trial and serves the objective of expeditious disposition of pending litigation. *Monahan v. McGrath,* 431 Pa.Super. 501, 636 A.2d 1197, 1199 (1994); *McGonigle v. Currence,* 387 Pa.Super. 511, 564 A.2d 508, 510 (1989). As our Supreme Court noted, however: "Procedural rules are not ends in themselves but means whereby justice, as expressed in legal principles, is administered. They are not to be exalted to the status of substantive objectives." *McKay v. Beatty,* 348 Pa. 286, 35 A.2d 264, 265 (1944). Rule 126 of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 126, provides:

> The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.

■ It is well established that courts always have the power to modify, suspend or rescind their own rules "whenever justice requires it and no party is prejudiced thereby." *Werts v. Luzerne Borough Auth.,* 15 Pa.Cmwlth. 631, 329 A.2d 335, 336 (1974). Ohioville fails to point out any prejudice suffered from the trial court's direct disposition of the action without first submitting it to compulsory arbitration. The court's failure to submit a case to compulsory arbitration pursuant to the local rules "does not deprive the court of jurisdiction to hear and decide the case." *Monahan,* 636 A.2d at 1199. Consequently, an action tried directly by the court without prior arbitration is not null and void. *Corestates Bank of Del. v. Richter,* 721 A.2d 805, 807 (Pa.Super.1998). Hence,

we reject Ohioville's challenge to the trial court's authority to enter the judgment.

Finally, Ohioville challenges the trial court's interpretation of the language in question in the rate increase notice. Ohioville argues that its interpretation of the language that the rate increase did not apply to the June 30, 2009 bill is consistent with the parties' intention and Ohioville's past practice of placing a notation on each payment check. In paying the June 30, 2009 bill, Ohioville noted "June Billing" in the memo section of the check. R.R. at 172.

■ Ohioville does not deny that it purchased water from Midland under a contract implied in fact, which is " 'an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances.' " *Liss & Marion, P.C. v. Recordex Acquisition Corp.,* 603 Pa. 198, 983 A.2d 652, 659 (2009) [quoting *Elias v. Elias,* 428 Pa. 159, 237 A.2d 215, 217 (1968) ]. In Pennsylvania, a contract implied in fact differs from an express contract only in the manner of its formation and has the same legal effect as an express contract. *Ingrassia Constr. Co. v. Walsh,* 337 Pa.Super. 58, 486 A.2d 478, 483 n. 7 (1984). Midland issued the rate increase notice pursuant to the terms of the contract implied in fact, under which it was required to give Ohioville 60–day notice of the rate increase. Midland's Solicitor's Letter dated December 10, 2010; R.R. at 41. Therefore, the language in the notice is subject to the rules of contract construction.

■ The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Sun*

filing of a Certificate of Readiness. Rule 1302E, Beaver Cty. L.R. 1302E.

*Co. (R & M) v. Pa. Turnpike Comm'n,* 708 A.2d 875, 878 (Pa.Cmwlth.1998). The parties' intention must be ascertained from the document itself, if its terms are clear and unambiguous. *Id.* The document is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Id.* Parol evidence is admissible to explain, clarify or resolve the ambiguity. *In re Estate of Herr,* 400 Pa. 90, 161 A.2d 32, 34 (1960). A proper interpretation of language in a document is a question of law subject to our plenary review. *McGaffic v. City of New Castle,* 74 A.3d 306, 310 n. 8 (Pa.Cmwlth.2013), *appeal denied,* —— Pa. ——, 85 A.3d 485 (2014).

The language "[e]ffective with the July 1, 2009 billing" in the rate increase notice is not altogether clear and can be susceptible of different interpretations. It does not specifically state that the rate increase would be effective as of the bill issued on or about July 1st for the June 2009 water usage, as Midland asserts. Nor does it state that the rate increase would be effective as of the usage beginning July 1st, as Ohioville insists. Thus, the language in question is ambiguous.

 Ohioville maintains that because the language in the notice is ambiguous, it should be construed in its favor and against Midland, who drafted the notice, under the construction rule of *contra proferentem.* Under that rule, "any ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable." *Sun Co.,* 708 A.2d at 878–79.

 Although the rules of construction aid the courts in ascertaining the intention of the parties, they are not intended to be "a talismanic solution to the construction of ambiguous language." *Burns Mfg. Co. v. Boehm,* 467 Pa. 307, 356 A.2d 763, 766 n. 3 (1976). Our Supreme Court explained:

Rules of construction serve the legitimate purpose of aiding courts in their quest to ascertain and give effect to the intention of parties to an instrument. They are not meant to be applied as a substitute for that quest. Where a document is found to be ambiguous, inquiry should always be made into the circumstances surrounding the execution of the document in an effort to clarify the meaning that the parties sought to express in the language which they chose.... *It is only when such an inquiry fails to clarify the ambiguity that the rule of construction ... should be used to conclude the matter against that party responsible for the ambiguity, the drafter of the document.* [Citations omitted; emphasis added.]

*Id. See also Motor Coils Mfg. Co. v. Am. Ins. Co.,* 308 Pa.Super. 568, 454 A.2d 1044, 1050 (1982) (holding that only where extrinsic evidence does not elucidate the intended meaning of the ambiguous language, should the language be construed against the drafter).

Under Rule 406 of the Pennsylvania Rules of Evidence, Pa. R.E. 406, "an organization's routine practice may be admitted to prove that on a particular occasion the ... organization acted in accordance with the ... routine practice." The exhibits presented at the hearing established Midland's routine practice of issuing a water bill at the end of a month for water usage in that month. For example, the bill dated April 30, 2009 was for the water usage recorded in the April 29 meter reading; the bill dated May 29, 2009 was for the water usage recorded in the May 29 meter reading. R.R. at 167 and 169. Likewise, the June 30, 2009 bill charged the water usage recorded on June 29. R.R. at 171.

The rate increase notice stated that the increase would be effective with the July 1, 2009 "billing," not as of July 1, 2009. There was no bill dated July 1, 2009. The next bill after June 30, 2009 bill was dated July 31 for the water usage in July and was due on August 17. R.R. at 173. Under Midland's routine practice, therefore, "the July 1, 2009 billing" was reasonably interpreted by the trial court to be the June 30 bill for the June water usage, not the July 31 bill for the July water usage. Because the evidence clarified the ambiguity of the language in question, it was unnecessary for the trial court to resort to the construction rule of *contra proferentem.*

Accordingly, the trial court's order is affirmed.

### *ORDER*

AND NOW, this 6th day of January, 2015, the order of the Court of Common Pleas of Beaver County in the above-captioned matter is AFFIRMED.