# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia                    :
                                        :
                v.                      :
                                        :
John F. Joyce,                          :     No. 896 C.D. 2019
                        Appellant       :     Argued: November 12, 2020


BEFORE:     HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
            HONORABLE ELLEN CEISLER, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON              FILED:  December 4, 2020


John F. Joyce (Joyce) appeals the April 22, 2019 order of the Court of Common Pleas of Philadelphia County (trial court) denying his post-trial motion seeking reduction of a cumulative statutory fine assessed by the City of Philadelphia (City) due to his failure to remediate various violations of The Philadelphia Code of General Ordinances (Code) on his property located at 2818 Belgrade Street, Philadelphia, Pennsylvania (Property).  Upon review, we affirm.

On May 13, 2014, the City's Department of Licenses and Inspections (Department) issued Joyce an initial notice of violation informing him that the Property was unsafe pursuant to Section PM-307.0 of the Philadelphia Property

Maintenance Code.[1]  Reproduced Record (R.R.) at 26a.  Specifically, the notice informed Joyce that the main roof of the Property had been designated as unsafe in accordance with Section PM-307.1 of the Philadelphia Property Maintenance Code,[2] as it had partially collapsed and was in danger of further collapse.  *Id.*  The notice also informed Joyce that the front and rear walls of the Property were unsafe pursuant to the same Section, as they were bulging and also in danger of collapse. *Id.*  The City instructed Joyce to obtain all necessary permits, to stucco the remaining party walls exposed by demolition, and to repair or demolish the structure in whole or in part, warning that failure to comply "within 30 days may result in the City taking action to demolish the structure" and bill him for all costs.  *Id.*  In addition, the notice stated that fines would be assessed from May 13, 2014, in the amount of $150 to $2,000 per violation each day the violation remained uncorrected.  R.R. at

---

[1] The Philadelphia Property Maintenance Code, also referred to as Subcode "PM," is located within Title 4 (The Philadelphia Building Construction and Occupancy Code) of the Code. *See* Phila., Pa., Code tit. 4, ch. 4-200.0 (2020).  Section PM-307.1 provides, in relevant part:

> All structures that are or hereafter shall become unsafe, unsanitary or deficient because of inadequate means of egress facilities, or which constitute a fire hazard, or are otherwise dangerous to human life or the public welfare, or which involve illegal or improper occupancy or inadequate maintenance, shall be deemed unsafe.  All unsafe structures shall be taken down and removed or made safe and secure as the code official deems necessary and as provided for in this Section.

[2] An "unsafe structure" pursuant to Section PM-307.1 was a Class III violation under the former Philadelphia Property Maintenance Code, for which violators were subject to a maximum fine of $2,000 per offense.  *See* Sections 109(3)(e) and A-601.3 of the Code; *see also City of Philadelphia, Bill No. 140856*, available at http://www.amlegal.com/pdffiles/Philadelphia/140856.pdf (last visited Dec. 3, 2020).  The Philadelphia Property Maintenance Code was amended July 1, 2015, and Section PM-307.1 was repealed and replaced by Section PM-108.  *See Am. Legal: Publ'g Corp.—Philadelphia, Pennsylvania*, available at https://codelibrary.amlegal.com/codes/philadelphia/latest/overview (last visited Dec. 3, 2020).  An "unsafe structure" pursuant to Section PM-108 remains a Class III violation warranting a $2,000-per-offense fine pursuant to Sections 109(3)(e) and A-601.3 of the Code.

26a-27a. The notice explained the right to appeal the violations within five days, and indicated that the Department would reinspect the Property on or around June 17, 2014, to determine compliance with its order. *Id.*

On July 4, 2014, the Department issued another warning following reinspection, informing Joyce that the Property remained in violation of the Code and again ordering him to remediate the violations within 30 days. R.R. at 28a-29a. The City issued yet another warning on November 8, 2016, reiterating the same instructions. R.R. at 30a-31a. On November 9, 2016, the City again issued a notice of failure to remediate the unsafe conditions on the Property and advised Joyce, in pertinent part, as follows:

> If you fail to comply with this order within 30 days, the City may eliminate the unsafe condition(s) by repair or demolition using its own forces or by contract. You, the owner, will be billed for all costs incurred including an administrative fee. Failure to pay such bill will result in the City filing a lien in the amount against the title to the [Property] and/or costs and charges being recovered by a civil action brought against you.

R.R. at 32a. Joyce did not appeal the notice of violation. R.R. at 57a.

On April 19, 2017, the City filed a complaint against Joyce. Trial Court Op. at 2, R.R. at 145a. That same day, the City filed a petition for a rule to show cause why the requested relief should not be granted, which the trial court subsequently issued upon Joyce. *Id.* The City eventually effected service of its complaint upon Joyce on September 5, 2017. *Id.* On October 26, 2017, Joyce signed an agreement permitting the City to inspect the Property and indicating his assent to demolition of the entire building. R.R. at 35a-36a.

3

In November 2017, two burglars were arrested on the Property after breaking in and spilling hazardous material from electrical transformers. R.R. at 83a. On January 16, 2018, the trial court conducted a hearing at which an inspector testified that he recently discovered several electrical transformers on the Property leaking hazardous waste in the form of oil that may contain PCB.[3] Transcript of Testimony (T.T.), 1/16/18 at 2-3, R.R. at 40a. The inspector further testified that he contacted the Environmental Protection Agency (EPA), which indicated that it would commence removal of the hazardous waste despite the building's state of collapse. T.T., 1/16/18 at 3-4, R.R. at 40a. The inspector stated that the Department would seek an order to demolish the building after the EPA concluded its cleanup. T.T., 1/16/18 at 4, R.R. at 40a.

The trial court held another hearing on April 9, 2019, at which a representative testified on behalf of the City regarding its intention to impose a fine of $35,120 on Joyce, as the Property had been out of compliance for 1,756 days. T.T., 4/9/19 at 4-5, R.R. at 56a-57a. The City's representative stated that the Property posed a risk to the safety of Joyce's neighbors as well as the general public. T.T., 4/9/19 at 5, R.R. at 57a. Joyce indicated through his attorney that he did not contest the violations. *Id.* Joyce's attorney averred that the assessed value of the Property was $66,000, which prompted the trial court to state that the market value of the Property did not factor into consideration of the challenged statutory fine. T.T., 4/9/19 at 13-14, R.R. at 59a. Nevertheless, noting that the EPA also sought

---

[3] PCB refers to polychlorinated biphenyl, a toxic, man-made chemical that is regulated by the Environmental Protection Agency (EPA). *See* POLYCHLORINATED BIPHENYLS (PCBs): UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, available at https://www.epa.gov/pcbs/learn-about-polychlorinated-biphenyls-pcbs (last visited Dec. 3, 2020). Though not defined as hazardous waste, "it is possible that PCBs may be incidental contaminants in listed hazardous waste." *Id.*

$2,000,000,[4] the trial court ultimately reduced the fine to $25,000. T.T., 4/9/19 at 16, R.R. at 59a.

On April 9, 2019, the trial court issued an injunction and order authorizing the City to demolish the subject premises on the Property and ordering Joyce to bear all costs. R.R. at 76a-78a. On April 18, 2019, Joyce filed a post-trial motion asserting that the $25,000 statutory fine violated the prohibition against excessive fines contained in the Eighth Amendment to the United States Constitution, U.S. Const. amend. VIII, and Article I, Section 13 of the Pennsylvania Constitution, Pa. Const. art. I, § 13, and requesting that the trial court reduce the fine to $2,500. R.R. at 82a. The trial court denied this motion on April 22, 2019. Trial Court Op. at 1, R.R. at 144a.

On May 23, 2019, Joyce filed a notice of appeal with this Court. On June 26, 2019, Joyce filed a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), contending that the $25,000 statutory fine was unconstitutionally excessive as it was grossly out of proportion to the severity of the Code violations and asserting that the trial court erred in denying his request to reduce the fine. *See* R.R. at 141a-42a.

The trial court issued an opinion in accordance with Pennsylvania Rule of Appellate Procedure 1925(a), holding that the cumulative statutory fine was not unconstitutionally excessive. *See* R.R. at 144a-49a. The trial court noted that the Property is located on a highly active residential street and that Joyce permitted the Code violations to continue without remediation for more than 2,000 days. Trial Court Op. at 4, R.R. at 147a. The trial court further noted that from May 13, 2014, through at least April 9, 2019, Joyce remained in violation of the Code, and that "the

---

[4] The trial court was presumably referring to a lien on the Property imposed by the EPA to recoup the cost of removing the hazardous waste. *See* Post-Trial Motion at 2-3, R.R. at 83a-84a.

condition of the subject premises presented a serious and immediate hazard to the safety, health[,] and welfare of the occupants of the building, the neighbors, fire and rescue personnel, and the public in general." *Id.* The trial court therefore concluded that the $25,000 cumulative statutory fine was not unconstitutionally excessive, but rather resulted from Joyce's "willful refusal to uphold his legal responsibility to bring the subject [P]roperty into compliance." Trial Court Op. at 4-5, R.R. at 147a-48a.

Before this Court,[5] Joyce again argues that the $25,000 fine is excessive and overly punitive in violation of the United States and Pennsylvania Constitutions. Therefore, he requests that this Court reduce it to "a more reasonable fine" of $2,000. Joyce's Br. at 8 and 12 (citing U.S. Const. amend. VIII; Pa. Const. art. I, § 13). Joyce maintains that Pennsylvania "courts are loath to permit cumulative penalties." Joyce's Br. at 11 (quoting *Geffen v. Baltimore Mkts.*, 191 A. 24 (Pa. 1937)). Joyce asserts that Pennsylvania courts must consider the value of the property forfeited[6] in evaluating proportionality. Joyce's Br. at 10. Joyce maintains that the $25,000 fine is "grossly out of proportion to the value of the [P]roperty," which the City valued at $66,000, and further notes that the City sought to impose a fine of $35,000. *Id.* at 11-12. Joyce notes that "[w]hile the [P]roperty is not being confiscated, [it] will have a lien placed on it for the cost of the demolition performed, which is going to be well over the value of the Property[.]" *Id.* at 12.

---

[5] Our review of this appeal is limited to examining whether the trial court abused its discretion or committed an error of law. *Lower Southampton Twp. v. Dixon,* 756 A.2d 147, 150 n.7 (Pa. Cmwlth. 2000). Further, "[w]hether a fine is excessive under our Constitution is a question of law, therefore our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014).

[6] Although Joyce notes elsewhere in his appellate brief that "the [P]roperty is not being confiscated[,]" he contends that the lien on the Property relating to demolition costs will exceed the Property's value. Joyce's Br. at 12. He implicitly asserts this is a forfeiture.

Joyce also contends that the $25,000 fine is not reasonably related to the severity of the violations on the Property. Joyce's Br. at 11 & 13. Further, Joyce asserts that the cumulative fine "clearly represents an attempt to collect revenue and is not reasonably related to the actual costs incurred by the City." *Id.* at 13. Joyce further asserts that, despite his willingness to compromise and to consent to the City's proposed remedy, the City "instead sought to punish him for his inability to maintain his crumbling warehouse," and that "[t]his punitive conduct by a municipality should not be sanctioned by our courts." *Id.* at 12.

Moreover, Joyce contends that "the fine is improper since the City and the [trial] [c]ourt are punishing the owner for the delay in this case occasioned by the EPA cleanup at the site, which took over a year to complete." Joyce's Br. at 14. Joyce notes that "[t]his cleanup was necessitated by a break in by burglars at the Property, who tampered with and spilled the contents of electrical transformers[.]" *Id.* at 14. Joyce avers that he "was willing to consent to this demolition immediately when he was informed of this enforcement action." *Id.* at 14.

The City counters that the contested fine comports with constitutional requirements and was assessed in accordance with the Code on the basis of Joyce's prolonged failure to remediate dangerous conditions on his Property. *See* City's Br. at 10-14.

Section A-601 of the Code specifies the penalties for Code violations. The Code provides basic fines for Code violations ranging between $150 and $300 per offense. Phila., Pa., Code § A-601.1. Section A-601.3 describes violations constituting Class III offenses and mandates that such violations "shall be subject to the maximum fine set forth in subsection 1-109(3) of [t]he [] Code." Phila., Pa., Code § A-601.3. Section 109(3)(e) provides for a maximum fine of $2,000 for each

7

Class III offense committed on or after January 1, 2009. Phila., Pa., Code § 1-109(3)(e). Section A-601.4 of the Code further provides that "[e]ach day that a violation continues after issuance of a notice or order shall be deemed a separate offense." Phila., Pa., Code § A-601.4.

The Eighth Amendment to the United States Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed . . . ." U.S. Const. amend. VIII. The Pennsylvania Constitution similarly provides: "Excessive bail shall not be required, nor excessive fines imposed . . . ." Pa. Const. art. I, § 13.[7] "The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998); *see also Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279-80 (Pa. 2014) ("[b]y its plain language, the [second] clause employs a concept of proportionality; the difficulty is articulating a principle by which to measure excessiveness or proportionality"). As our Supreme Court has explained:

> The primary purpose of a fine or a penalty is twofold: to punish violators and to deter future or continued violations. Since it serves not only as a punishment but also as a deterrent, the amount of the fine can be raised to whatever sum is necessary to discourage future or continued violations, subject, of course, to any restriction imposed on the amount of the fine by the enabling statute or the Constitution.

---

[7] The Excessive Fines Clause of the Pennsylvania Constitution is coextensive with the Eighth Amendment to the United States Constitution. *See Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce St.*, 832 A.2d 396, 399 (Pa. 2003).

*Eisenberg*, 98 A.3d at 1283 (quoting *Commonwealth v. Church*, 522 A.2d 30, 34 (Pa. 1987)) (brackets omitted). Further, "[our Supreme Court] and [this] Court have rejected the notion that there must be strict proportionality between the harm resulting from the offense and the penalty imposed." *Eisenberg*, 98 A.3d at 1281. Thus, a fine "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334. Moreover, a fine may be deemed unconstitutionally excessive where "the amount . . . [is] so great as itself to be confiscatory and beyond the bounds of all reason and justice." *Church*, 522 A.2d at 34.

We agree with the trial court that the $25,000 cumulative statutory fine is not unconstitutionally excessive. The City assessed the aggregate fine on the basis of Joyce's uncontested and longstanding Code violations stemming from his failure to remediate dangerous conditions on the Property despite repeated notices and warnings from the City. *See City of Philadelphia v. DY Props., LLC*, 223 A.3d 717, 723-25 & 723 n.12 (Pa. Cmwlth. 2019) (despite waiver by building owner of excessive fines argument, challenged $243,200 aggregate fine resulting from the accumulation of daily fines levied by the City for multiple Code violations was not unconstitutionally excessive); *Commonwealth v. CSX Transp., Inc.*, 653 A.2d 1327, 1332-33 (Pa. Cmwlth. 1995) (upholding an approximate $100,000 aggregate fine of $10 per fish killed, in accordance with the pollution of waters section of the Fish and Game Code, 30 Pa.C.S. § 2504(a)(2), "[b]ecause [the company's] violation resulted in multiple fish being killed subjecting it to a large fine does not mean that the individual penalties provided for in this section violate due process"); *City of Philadelphia v. RB Parking, LLC* (Pa. Cmwlth., No. 515 C.D. 2019, filed July 16, 2020), slip op. at 9-11, 2020 Pa. Commw. Unpub. LEXIS 379 (unreported)

9

(affirming the trial court's imposition of a $90,000 cumulative statutory fine resulting from a company's chronic failure to comply with Code requirements regarding permitting for structural work and interior renovation); *City of Philadelphia v. Broad & Olney All., LP* (Pa. Cmwlth., No. 49 C.D. 2019, filed July 14, 2020), slip op. at 10-11, 2020 Pa. Commw. Unpub. LEXIS 372 (unreported) (affirming the trial court's imposition of a $26,850 aggregate statutory fine for Class III-level offense violations of Code requirements for commercial parking operations).[8]

As Joyce points out, the Pennsylvania Supreme Court has held that "courts are loath to permit cumulative penalties." Joyce's Br. at 11 (quoting *Geffen*, 191 A. at 28). However, in *Geffen*, the Court went on to explain that "where it is plainly the intention of the Legislature to allow a plaintiff to recover a penalty for a definite act, courts will enforce the penalty for each act." *Geffen*, 191 A. at 28. More recently, in upholding as constitutional a fine imposing a rising scale of penalties for motor vehicle weight restriction violations, our Supreme Court reasoned that the legislature's decision "to increase the amount of the fines and to graduate them according to the amount of the overweight, instead of imposing a flat rate for each violation . . . was not irrational or unreasonable, but on the contrary was quite sensible[.]" *Church*, 522 A.2d at 31-34 (quoting *Commonwealth v. Smith*, 187 A.2d 267, 270 (Pa. 1963)).

Regarding Joyce's contention that the challenged fine "represents an attempt to collect revenue and is not reasonably related to the actual costs incurred by the City," *see* Joyce's Br. at 13, we note that "the amount of a fine need not be

---

[8] While this Court's unreported memorandum opinions may not be cited as binding precedent, they may be cited for persuasive value. Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a).

10

limited to the cost incurred by the [government] for each violation." *Church*, 522 A.2d at 34. Further, "[t]he fact that a particular fine might be greater than the actual damage caused by the violation does not make the fine excessive." *CSX Transp., Inc.*, 653 A.2d at 1332. As noted above, the purpose of a fine is, in large part, to deter future or continued violations, such that the amount of the fine may be raised to whatever sum is necessary to achieve a deterrent effect. *See Eisenberg*, 98 A.3d at 1283; *see also Mastrangelo v. Buckley*, 250 A.2d 447, 464 (Pa. 1969) ("if [a] [c]ity finds that it costs $1.00 to enforce each parking violation, it is not restricted to imposing a $1.00 parking fine, if the payment of such an amount will not discourage illegal parking").[9] Further, the $25,000 fine falls well within statutory parameters and represents a lenient sum in comparison to the maximum amount authorized by the Code. *See Eckhart v. Dep't of Agric.*, 8 A.3d 401, 407-08 (Pa. Cmwlth. 2010) ("we cannot conclude that the penalties were excessive, unreasonable, or disproportionate to the severity of the offenses in violation of the Eighth Amendment" where they were "calculated based upon specific guidelines established by Section 211(c) of the Dog Law, Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. § ) 459-211(c), which limits penalties to $500 per day for each violation"; further noting that "[t]he Bureau [of Dog Law Enforcement] had the authority to impose the maximum penalty for the acquisition of each of the additional dogs"); *see also City of Philadelphia v. Okamoto* (Pa. Cmwlth., No. 51 C.D. 2019, filed Apr. 29, 2020), slip op. at 12, 2020 Pa. Commw. Unpub. LEXIS 379 (unreported) (upholding a $37,200 cumulative statutory fine for failure to clear

---

[9] We note that Joyce's contention that the trial court failed to consider the value of the Property lacks merit. *See City of Philadelphia v. Okamoto* (Pa. Cmwlth., No. 51 C.D. 2019, filed Apr. 29, 2020), slip op. at 11, 2020 Pa. Commw. Unpub. LEXIS 379, *13 (unreported) (holding that "[t]he value of a [p]roperty is not a consideration of the trial court in considering fines for violations of the Code").

away construction debris and to obtain building, plumbing and electrical permits in accordance with Title 4 of the Code, where "the trial court remained within the confines of the Code"). We therefore agree with the trial court that the contested fine is not unconstitutionally excessive.[10]

Joyce next argues that the City exceeded its authority under the Philadelphia Home Rule Charter, Section 1-109 of the Code, and the First Class City Home Rule Act[11] in assessing the fine. Joyce's Br. at 14-15. The City counters that Joyce waived this argument by failing to raise it before the trial court entered its order, in his post-trial motion, or in his statement of errors complained of on appeal. City's Br. at 16-17 (citing Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b); Pa.R.C.P. No. 227.1(b)). Joyce replies that he did not waive his assertion that the City lacked the authority to assess the fine, as he specifically challenged the constitutionality of the fine before the trial court and "was merely strengthening his challenge . . . with

---

[10] Joyce also asserts that "our courts have not hesitated to strike down as unconstitutional excessive fees charged for development fees or business licenses." Joyce's Br. at 10-11 (citing *Olan Mills v. City of Sharon*, 92 A.2d 222 (Pa. 1952); *Flynn v. Horst*, 51 A.2d 54 (Pa. 1947); *Raum v. Bd. of Supervisors of Tredyffrin Twp.*, 370 A.2d 777 (Pa. Cmwlth. 1977)). However, our Supreme Court has explained:

> A fine or penalty differs substantially from a license fee . . . . A person who wants to possess and enjoy a privilege in the form of a license must pay the corresponding license fee and it is inequitable for a municipality to raise revenues for general purposes by imposing a larger license fee on a certain class of people who must pay the fee to secure the privilege or license. On the other hand, there is no requirement that one place himself in a position which subjects him to a fine; he may merely choose not to engage in the prohibited activity and, if he does not do the prohibited act, he need not pay a fine.

*Mastrangelo*, 250 A.2d at 464. Further, contrary to a license fee, "the amount of a fine need not be limited to the cost incurred by the government for each violation." *Church*, 522 A.2d at 34. Therefore, the above-cited cases are inapposite and do not advance Joyce's claim.

[11] Act of April 21, 1949, P.L. 665, *as amended*, 53 P.S. §§ 13101-13157.

additional legal authority," rather than "raising a new argument on appeal." Joyce's Reply Br. at 4.

"It is well established that in order to preserve an issue for appeal, a litigant must make a timely, specific objection at trial and must raise the issue on post-trial motions." *Mun. Auth. of Borough of Midland v. Ohioville Borough Mun. Auth.*, 108 A.3d 132, 136-37 (Pa. Cmwlth. 2015) (emphasis, internal brackets and quotations marks omitted). "Issues not preserved for appellate review cannot be considered by this Court, even if the alleged error involves a basic or fundamental error." *Id.* Nevertheless, a party may raise additional legal authority on appeal in support of a basic legal theory asserted before the lower tribunal. *See HIKO Energy, LLC v. Pa. Pub. Util. Comm'n*, 209 A.3d 246, 262 (Pa. 2019) (holding that an electric generation supplier failed to preserve a constitutional challenge to fines imposed by the Public Utility Commission (Commission), where "it did not articulate its constitutional theory until its application for stay of the Commission's decision"). Our Supreme Court has clarified:

> Notwithstanding our waiver jurisprudence, we have recognized the delicate, yet distinct line between failing to raise a claim and adducing additional authority for an appellate court. . . . In evaluating this distinction, the critical inquiry is whether a party is raising a wholly new legal theory, or is merely strengthening its previously articulated argument with additional legal authority.

*Id.*

Here, Joyce argues for the first time on appeal that the City lacked the authority to assess the contested fine under the Philadelphia Home Rule Charter, the Code, and the First Class City Home Rule Act. However, the issue of proportionality under the Excessive Fines Clause rests on a legal theory that is entirely distinct from

13

the question of whether the City acted *ultra vires*. *See HIKO Energy, LLC*, 209 A.3d at 262; *Allegheny Cnty. v. Commonwealth*, 490 A.2d 402, 413 n.9 (Pa. 1985) (the "belated clarification of [a] party's claims" did not constitute waiver where the party "merely identified additional legal authority" and its "basic theory [was] the same as that set forth in its amended complaint"); *cf. Shenango Inc. v. Dep't of Envtl. Prot.*, 934 A.2d 135, 142 n.16 (Pa. Cmwlth. 2007) (a party's failure to expressly address a regulation before the Environmental Hearing Board did not result in waiver where the party did "not assert[] a new argument, but rather offer[ed] authority to support its prior argument"). We therefore agree with the City that Joyce failed to preserve this claim for appellate review. *See Mun. Auth. of Borough of Midland*, 108 A.3d at 136-37.

Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia                    :
                                        :
            v.                          :
                                        :
John F. Joyce,                          :       No. 896 C.D. 2019
                    Appellant           :

O R D E R

AND NOW, this 4th day of December, 2020, the April 22, 2019 order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge