**SUN COMPANY, INC. (R&M),**
Petitioner,

v.

**PENNSYLVANIA TURNPIKE COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 1997.
Decided March 16, 1998.

William J. Brennan, IV, Philadelphia, for petitioner.

Peter J. Fontaine, Philadelphia, for respondent.

Before SMITH and KELLEY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Before this Court are the petition of Sun Company, Inc. (R&M) (Sun) to vacate an arbitration award and the cross-petition of the Pennsylvania Turnpike Commission (Commission) to confirm the arbitration award.

Sun operates gasoline service stations at the turnpike service plazas, as the assignee of the lease agreement (Lease) entered into between the Commission and the Gulf Oil Division of Cumberland Farms, Inc. (Cumberland) in May 1990. After the Lease was assigned to Sun on April 21, 1993, a dispute arose between the Commission and Sun as to whether Sun was obligated under the Lease to obtain water pollution discharge permits (NPDES Part I permits) required to operate on-site sewage treatment plants located at the following seven turnpike service plazas: Hickory Run, Peter J. Camile, Lawn, Blue Mountain, Plainfield, Sideling Hill and Zelienople.

Sun claimed that under Paragraph 12.D of the Lease, it was only required to pay for costs for operating and maintaining the sewage treatment plants, and that because it was not an operator of those facilities, it was not required under the applicable federal and state environmental regulations to obtain the NPDES Part I permits. Paragraph 12.D of the Lease provides:

Sewage Treatment Facilities—The cost to obtain and maintain public sewer service including maintenance of sewage lines serving the plaza and the cost to maintain and operate the sewage treatment facilities with properly licensed operators in compliance with state operating regulations shall be the responsibility of OPERATOR, subject to a reimbursement of fifty (50%) percent of the costs from the restaurant operator. In the event maintenance at any location is directly attributable to misuse of the sewer lines by the restaurant operator, the OPERATOR shall provide such maintenance and bill the restaurant operator for the full amount of such cost, documenting its necessity. In the event existing sewage plants are required to be converted to public sewer service at any of the plazas, the COMMISSION will bear the cost of such conversion. The COMMISSION will be responsible for capital replacement cost due to failure or normal breakage and costs of improvements to the system if required by governing authorities.

The Commission and Sun submitted the dispute for arbitration pursuant to Paragraph 26 of the Lease. After hearings, the arbitration panel determined in a unanimous decision that Paragraph 12.D of the Lease is ambiguous, and that under the entire Lease, as interpreted with the aid of the extrinsic evidence presented at the hearings, Sun is obligated to operate and maintain the sewage treatment plants and obtain the NPDES Part I permits. Sun then filed the petition to vacate the arbitration award, and the Commission in response filed the cross-petition to confirm the arbitration award with this Court.[1]

Sun contends that the arbitration award should be "vacated" because of errors of law committed by the arbitration panel. Sun argues that Paragraph 12.D of the Lease is not ambiguous, that the arbitration panel therefore improperly considered the extrinsic evidence to interpret the Lease, and that even if Paragraph 12.D is considered ambiguous, the arbitration panel should have construed such ambiguity against the Commission, the drafter of the Lease.

Where, as here, the contract, to which a government unit of the Commonwealth is a party, does not specify any statutory provision governing the arbitration, the arbitration submitted under the contract is subject

---

1. Sun's petition to vacate, initially filed with the Court of Common Pleas of Philadelphia County, was transferred by stipulation of the parties to this Court, which has exclusive original jurisdiction over the matter under Section 761(a) of the Judicial Code, *as amended*, 42 Pa.C.S. § 761(a).

to the provisions of the Uniform Arbitration Act (Act), 42 Pa.C.S. §§ 7301—7320. Section 7302(c) of the Act, 42 Pa.C.S. § 7302(c).

Under Section 7314 of the Act, 42 Pa.C.S. § 7314, a statutory arbitration award may be vacated only upon a showing of fraudulent, irregular or partial conduct on the part of the arbitrators. *Martin v. PMA Group*, 420 Pa.Super. 624, 617 A.2d 361 (1992). The arbitration award, therefore, may not be vacated based on the errors of law allegedly committed by the arbitration panel. In its brief, Sun concedes that the proper standard of review applicable to its petition is set forth in Section 7302(d)(2) of the Act, 42 Pa.C.S. § 7302(d)(2), which provides that a court reviewing an arbitration award "shall ... modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict." Consequently, we will treat Sun's petition as a petition to modify or correct the arbitration award filed under Section 7302(d)(2) of the Act.

In reviewing an arbitration award under the judgment n.o.v. standard of the Act, the court may not disturb the factual findings of the arbitration panel, unless they are against the clear weight of the evidence. *Pennsylvania Turnpike Commission v. Litton RCS, Inc.*, 20 Pa.Cmwlth. 577, 342 A.2d 108 (1975). Further, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the verdict winner, the Commission in this matter. *Tonkovic v. State Farm Mutual Automobile Ins. Co.*, 513 Pa. 445, 521 A.2d 920 (1987).

The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Lower Frederick Township v. Clemmer*, 518 Pa. 313, 543 A.2d 502 (1988). The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *State Highway & Bridge Authority v. E.J. Albrecht Co.*, 59 Pa.Cmwlth. 246, 430 A.2d 328 (1981). A determination of whether a contract is ambiguous is a question of law. *Hutchison.*

In this matter, the first sentence of Paragraph 12.D of the Lease sets forth Sun's obligation to pay for the costs of operating and maintaining the sewage treatment plants. Under the second sentence, Sun is obligated to provide maintenance of the sewer in the event of misuses by the restaurant operators. The Commission is obligated to pay for conversion of sewage service and capital replacement costs under the third sentence. However, Paragraph 12.D or any other provisions of the Lease fail to definitely identify the party who is obligated to assume the essential responsibilities for operating and maintaining the sewage treatment plants. Where, as here, the agreement is indefinite as to the most crucial aspect of the agreement, such as the party which is to assume the obligation under the agreement, the agreement is deemed to be ambiguous. *Krause v. Great Lakes Holdings, Inc.*, 387 Pa.Super. 56, 563 A.2d 1182 (1989), *appeal denied sub nom. Krause v. Penn Pocahontas Coal Co.*, 524 Pa. 629, 574 A.2d 70 (1990). Hence, we conclude that the Lease is ambiguous as to the party who is obligated to operate and maintain the sewage treatment plants.

Where, as here, an ambiguity exists in the contract, parol evidence is admissible to explain, clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the agreement or by extrinsic or collateral circumstances. *In re Estate of Herr*, 400 Pa. 90, 161 A.2d 32 (1960). Sun argues, however, that even if the Lease is ambiguous, the arbitration panel's consideration of extrinsic evidence was improper because (1) any ambiguity in the Lease should be construed against the Commission, the drafter of the Lease and (2) Paragraph 38 of the Lease provides that the Lease contains the entire agreement of the parties.

Under the rule of *contra proferentem*, any ambiguous language in a contract

is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable. Restatement (Second) of Contracts § 206; *State Public School Building Authority v. Quandel*, 137 Pa.Cmwlth. 252, 585 A.2d 1136 (1991). Further, if a written agreement was intended by the parties to encompass the entire understanding between the parties, any addition to or subtraction from written terms of the agreement may not be made based on parol evidence in the absence of fraud, accident or mistake. *Coal Operators Casualty Co. v. Charles T. Easterby & Co.*, 440 Pa. 218, 269 A.2d 671 (1970).

■ The rules of construction serve the purpose of aiding courts in ascertaining the intention of the parties. However, the courts are still required to inquire into the circumstances surrounding the execution of the contract. *Hutchison.* The Pennsylvania Supreme Court explained this principle as follows:

[I]t is equally clear that the rule is not intended as a talismanic solution to the construction of ambiguous language. Rules of construction serve the legitimate purpose of aiding courts in their quest to ascertain and give effect to the intention of parties to an instrument. They are not meant to be applied as a substitute for that quest. Where a document is found to be ambiguous, inquiry should always be made into the circumstances surrounding the execution of the document in an effort to clarify the meaning that the parties sought to express in the language which they chose.... It is only when such an inquiry fails to clarify the ambiguity that the rule of construction ... should be used to conclude the matter against that party responsible for the ambiguity, the drafter of the document.

*Burns Manufacturing Co. v. Boehm*, 467 Pa. 307, 313 n. 3, 356 A.2d 763, 766 n. 3 (1976) (citations omitted).

■ Moreover, the parol evidence rule "has never barred the introduction of clear, precise, and convincing evidence to show that the party who seeks to enforce the written agreement according to its tenor has admitted and acknowledge that *the agreement as written did not express what the parties intended* and that what the parties intended was omitted from the written agreement ...." *Coal Operators Casualty Co.*, 440 Pa. at 223, 269 A.2d at 673 (quoting *Boyd's Estate*, 394 Pa. 225, 233, 146 A.2d 816, 820 (1958)) (emphasis in original).

Therefore, the arbitration panel did not commit an error of law in considering the extrinsic evidence presented at the hearings for the purpose of ascertaining the intention of the parties to the Lease and clarifying the ambiguity existing in the Lease as to the responsibilities for operating and maintaining the sewage treatment plants.

At the arbitration hearings, the Commission presented the following evidence to support its position. The site plans attached to the Commission's June 15, 1989 Request for Proposal for Service Station Operations contained the drawings for the sewage treatment plants to be operated at the turnpike service plazas in question.[2] The Proposed Organizational Structure submitted by Cumberland stated that it would hire three full-time employees, who would be responsible for "Sewer Plant Operations Maintenance" and would "monitor and operate full commercial type sanitary systems." After it signed the Lease, Cumberland obtained transfer of the NPDES Part I permits for the sewage treatment plants. In its unsuccessful bid to operate service stations at the turnpike service plazas in 1989, Sun also stated that its "bid reflects expenditures necessary to operate and maintain the Turnpike Sewage Treatment Plants (TSTP's) in compliance with the Pennsylvania Department of Environmental Resources (D.E.R.) permits."

Further, while negotiating the assignment of the Lease in 1992 following its bankruptcy, Cumberland informed Sun that Cumberland was operating the sewage treatment plants in question and employed five full-time and

---

**2.** Paragraphs 2 and 10 of the Lease incorporate various documents, including the Commission's 1989 Request for Proposal and Cumberland's 1989 Proposal for Service Station Operations. These documents are therefore part of the Lease and relevant in resolving the ambiguity of the Lease.

one part-time employees who were certified to operate such facilities. On April 16, 1993 before the assignment of the Lease, the Commission provided Sun with the October 1, 1987 lease entered into between the Commission and Marriott Family Restaurants, Inc., which contained the following Paragraph: "The COMMISSION shall require the service station operator at each plaza to maintain and operate the sewage treatment facilities with properly licensed operators in compliance with state operating regulations subject to a reimbursement of fifty (50%) percent of such costs from [Marriott]." Sun's employees and the Commission's officials also testified that Sun was aware before the assignment of the Lease that the lessee under the Lease was obligated to operate and maintain the sewage treatment plants and obtain the NPDES Part I permits.

Thus, the overwhelming evidence presented by the Commission at the arbitration hearings demonstrates, as the arbitration panel found, that Cumberland, as the original lessee, did in fact operate the sewage treatment plants and obtain the NPDES Part I permits, and that Sun was well aware before the assignment of the Lease that the Commission was interpreting the Lease as requiring the lessee to operate and maintain such facilities and obtain the NPDES Part I permits. A party, who willingly and without protest enters into a contract with knowledge of the other party's interpretation of the contract, is bound by such interpretation and cannot later claim that the contract should be interpreted differently. *Emor, Inc. v. Cyprus Mines Corp.*, 467 F.2d 770 (3rd Cir. 1972).

Moreover, Sun's position that it was only obligated to pay for the costs of operating and maintaining the sewage treatment plants is inconsistent with its course of conduct subsequent to the assignment of the Lease. As the arbitration panel found, after the assignment of the Lease Sun retained contractors and hired five Cumberland's employees for the purpose of operating and maintaining the sewage treatment plants. As the Pennsylvania Supreme Court held, the course of conduct of a party is always relevant in interpreting a contract and may

be the strongest indication of the intention of the parties to the contract. *Atlantic Richfield Co. v. Razumic,* 480 Pa. 366, 390 A.2d 736 (1978).

Therefore, the arbitration panel did not commit an error of law in determining, based on the evidence presented at the hearings, that the Lease requires Sun to operate and maintain the sewage treatment plants.

Under Paragraph 21 of the Lease, Sun, as the lessee, is required to "procure all permits and licenses necessary to carry out its responsibilities under the provisions of [the Lease]." Section 202 of Act of June 22, 1937, P.L.1987, known as the Pennsylvania Clean Streams Law, *as amended,* 35 P.S. § 691.202, requires any person, who discharges sewage in any manner into the waters of the Commonwealth, to obtain a permit from the Department of Environmental Protection. The pertinent federal regulations at 40 C.F.R. § 122.21(b) provides that "[w]hen a facility or activity is owned by one person but is operated by another person, it is the operator's duty to obtain a permit." Hence, as the party responsible for operating the sewage treatment plants, Sun is required to obtain the NPDES Part I permit from the Department of Environmental Protection.

Since Sun failed to demonstrate that the arbitration award should be modified or corrected under the standard set forth in Section 7302(d)(2) of the Act, its petition is denied, and the Commission's cross-petition to confirm the arbitration award is granted.

### ORDER

AND NOW, this 16th day of March, 1998, the petition to vacate the arbitration award filed by Sun Company, Inc. (R&M) (Sun) in the above-captioned matter is denied, and the cross-petition to confirm the arbitration award filed by the Pennsylvania Turnpike Commission (Commission) is granted. The arbitration award dated June 13, 1997 is hereby reduced to a judgment in favor of the Commission and against Sun pursuant to 42 Pa.C.S. § 7316. Sun shall take immediate actions necessary to obtain NPDES Part 1

permits for the seven sewage treatment plants subject to this proceeding.

LEADBETTER, J., did not participate in the decision of this case.