PICCIONE, J.,
Before the court for disposition is the petition for injunctive relief filed on behalf of the plaintiffs, John E. Riggans, III, and Samantha Riggans (hereinafter, the “plaintiffs”) and the preliminary objections filed on behalf of the defendants, Wayne ' Homes; New NV Vo., LLC, New NV Co., LLC d/b/a Wayne Homes, a/k/a WH Midwest, and WH Midwest (hereinafter, the “defendants”). This case arises from a dispute between contracting parties. The plaintiffs aver that on February 13, 2010, they entered into a contractual agreement (hereinafter, the “agreement”) with the defendant for the purpose of constructing a home. Prior to February 13,2010, plaintiff Samantha Riggans visited the defendant’s website to browse home construction options. She requested a quote on a house, and arranged a meeting in person. On February 13, 2010, the plaintiffs intended to drive to two companies’ offices to discuss building a home. They went to one office, which was closed, then drove to the defendant’s office in Ravenna, Ohio. The plaintiffs entered the office and a salesperson, Ms. Gloria Williams (hereinafter, “Williams”), approached them. The plaintiffs told Williams they wanted to build a home, and Williams showed the plaintiffs different models of homes and gave them brochures. Williams asked the plaintiffs in what time frame the plaintiffs wanted to construct their home, and the plaintiffs told Williams as soon as possible, the plaintiffs were getting married on August 24, 2010, or September 24,2010,[1] and they wanted the house to be fully *486 constructed by that date. Williams informed the plaintiffs that the defendant was busy and would have to be put on a waiting list to proceed. Williams told the plaintiffs that the sooner they could be put on the waiting list the better their chances were of having their home fully constructed by that date.
The plaintiffs believed that they had to be placed on the waiting list that date or else their home would not be finished by their wedding; so the plaintiffs agreed, paid a deposit, and Williams presented the plaintiffs with contract documents and building options. The plaintiffs decided on a model home, and Williams told the plaintiffs that the details could be decided at a later time. The plaintiffs recall that Williams handed them the agreement without giving the plaintiffs an opportunity to review it. Both plaintiffs described the process as Williams’ merely telling them where to sign, the more quickly the better. The plaintiffs spent approximately one hour with Williams on that date. The plaintiffs were excited and did not even think to stop to read the agreement nor did they have time to read it before signing it. The plaintiffs recall that they were not given a copy of the agreement from Williams, nor were they ever provided with a copy of the agreement in the mail or by other means by any other agent of the defendant. Similarly, the plaintiffs testified that they were not provided with a receipt of their $500.00 deposit. The first time the plaintiffs recall seeing the agreement was upon contacting an attorney for the purposes of pursuing claims against the defendant. The plaintiffs were also provided with a limited warranty document. Although both plaintiffs’ initials appear on each page of the document, the plaintiffs did not read the document nor was the document explained to them. The plaintiffs acknowledge that they *487 were signing an agreement to build a home.
After the plaintiffs signed all the contract documents, Williams provided them with a binder. The binder contained color samples, cabinet samples, and other construction options. A contract summary was in the binder; however, a copy of each of the contract documents was not in binder. In the contract summary in the binder, the third bullet states that the parties agree to abide by binding arbitration. The Plaintiffs did not read the contract summary at any point on or after February 13, 2010.
The plaintiffs testified that they did not read any of the contract documents; and even if they had read the documents, they did not know was arbitration was. And the plaintiffs certainly did not know that the agreement stated that agreeing to arbitration meant that they would be relinquishing their right to a jury trial by signing the agreement. Plaintiff John E. Riggans, III, has a high school level of education, and plaintiff Samantha Riggans is a registered nurse. Each plaintiff testified that they would never have signed the agreement if they had understood that they were giving up their right to a jury trial on disputes between them.
Williams has been in the home sale business for approximately thirty years and has been with the defendant for six years as a sales consultant. Williams explained the process of entering into an agreement to build a home. First, a quote is given to a potential buyer, and the quote is explained. This information can be exchanged by telephone, in person, or online. Next, the potential buyer visits an office location to enter into an agreement to construct a home. Williams stated that she generally explains the contract provisions, including the arbitration provision, of the contract to the buyers and presents the contract documents to the buyers. Williams *488 does not have the authority to close a deal if a buyer wishes to exclude a provision. After the documents are exchanged, reviewed and signed by the potential buyers, a copy is given to the buyer with a booklet that explains, step-by-step, how the house is built and in what timeline. The booklet contains various tabs and descriptions and has a place to put the purchase agreement. Williams does not have any recollection of the plaintiffs’ actually signing the documents, but she explained that in every case, she provides a copy of the contract documents to the buyer along with the booklet. Williams stated that had she not given a copy of the documents to the plaintiffs, she would be able to recall this mistake.
After the buyers sign the contract documents, the agreement is provided to management for approval. All of management has a meeting to approve the whole contract. After a contract is approved, it is signed by an agent of the defendant’s. Next, Williams sets up two appointments with the buyers. The first is a color appointment and the second is a preconstruction meeting. This process occurred with regard to the plaintiffs’ home construction. Williams recalled subsequently meeting with the plaintiffs, and the plaintiffs never asked for a copy of the agreement.
Plaintiff Samantha Riggans completed a survey after the completion of their home and another survey which was completed in October 2010, six months after the first survey. On neither survey did plaintiff Samantha Riggans state any objection to the contract process; however, the plaintiffs were not aware of the arbitration provision upon completing the surveys.
On December 3,2014, the plaintiffs filed the complaint in which they allege breach of implied and express warranty claims against the defendants. On December 17,2014, the plaintiffs then filed a petition for injunctive relief pursuant *489 to Pa.R.Civ.P. 1531 (hereinafter, the “petition”). In the petition, the plaintiffs requested this court issue a rule to show cause why the defendant should not be enjoined from proceeding with arbitration and schedule a hearing on the rule. On December 29, 2014, the defendant filed preliminary objections to the plaintiffs’ complaint in the nature of a motion to compel, in which the defendant argues that the arbitration provision within the agreement is valid and binding upon all parties. As a result, the defendant requests this court to compel the plaintiffs to pursue their claims through the arbitration process as provided in the agreement. The court held a hearing on the petition and argument on the preliminary objections on January 22, 2015 and the testimony of that hearing is summarized above. As both parties’ petitions involve the same issues, the court will decide them contemporaneously.
The instant issue is one of contract interpretation. “The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties.” Sun Co., (R&M) v. Pennsylvania Turnpike Com’n. 708 A.2d 875, 878 (Pa. Cmwlth. 1998). If the contract language is clear and unambiguous, the intention of the parties is ascertainable from the contract itself. Id. “A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.” Id. If the court finds that an ambiguity exists, the contract must be construed against the drafter and in favor of the other party’s interpretation, if reasonable. Id. The reasonableness of the terms of the contract is not appropriate for judicial review. One is assumed to understand the terms of the contract into which he is entering and those terms “must be regarded as binding without regard to whether the terms were fully understood by the [party]. Ignorantia non excusatP Simeone v. Simeone, 581 A.2d 168 (Pa. 1990). As stated by the Supreme Court of Pennsylvania *490 in Bollinger v. Central Pennsylvania Quarry Stripping & Construction Co., 229 A.2d 741, 742 (Pa. 1967), “Once a person enters into a written agreement he builds around himself a stone wall, from which he cannot escape by merely asserting he had not understood what he was signing.” “In the absence of proof of fraud, failure to read the contract is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.” Standard Venetian Blind Co. v. American Empire Insurance Co., 469 A.2d 563, 566 (Pa. 1983) (citations, internal quotation marks and brackets omitted).
Although these traditional contract principals dictate how to analyze a contract dispute, the court must also consider the federal policy, which favors arbitration agreements. Gaffer Insurance Co. v. Discover Reinsurance Co., 936 A.2d 1109, 1114 n. 7 (Pa. Super. 2007). When a party to a contract seeks to invalidate an arbitration clause, as the plaintiffs do here, the court must determine “(1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision.” Smith v. Cumberland Group, Ltd., 687 A.2d 1167, 1171 (Pa. Super. 1997). Lastly, the court notes that it is the burden of the moving party to demonstrate that a valid agreement to arbitrate existed between the parties and that the dispute is within the scope of the arbitration provision. 42 Pa.C.SA. § 7304(a).
In the instant case, paragraph twenty (20) of the agreement states, in pertinent part, as follows:
*****NOTICE T0 BUYer*****
READ CAREFULLY
This agreement provides that all disputes between *491 you and Wayne Homes will be resolved by BINDING ARBITRATION. THIS MEANS THAT YOU AND WAYNE HOMES EACH GIVE UP THE RIGHT TO GO TO COURT to assert or defend rights under this agreement. Your rights and Wayne Homes’ rights will be determined by a neutral arbitrator and not by a judge and jury. The arbitration procedures are SIMPLER AND MORE LIMITED THAN THE RULES FOLLOWED IN A COURT. Arbitrator decisions are as enforceable as any court judgement [sic] but are subject to VERY LIMITED REVIEW BY A COURT. The scope of this provision is broad and requires arbitration of all claims including, for example, claims of misrepresentation or fraud in the inducement or for personal injury or seeking equitable remedies.
See complaint, Exhibit A (emphasis in original). This paragraph contains the names of the contracting parties, namely “you” and “Wayne Homes.” Also in paragraph twenty, below the notice, the agreement provides an explanation of the arbitration process. The agreement states in pertinent part, “[I]n the event that any dispute arises... whether such claim is based in contract or negligence or other tort theory of law or based upon any consumer protection or other law or statute, all such disputes shall be submitted to binding arbitration under the construction industry rules (as of the date of filing) of the American Arbitration Association (AAA)[.]” Complaint, Exhibit A. The paragraph goes on to explain that the arbitrators shall have experience in construction of single family homes, determine the “arbitrability” of a dispute, and will use the contract documents and limited warranties, or Residential Construction Performance Guidelines of the National Homebuilders Association as the standard for their decision. The paragraph also advises that if a party fails to bring a claim in arbitration that existed at the time *492 arbitration was initiated, that claim would be waived. This paragraph also explains that the buyers and Wayne Homes agree to share the cost of filing fees, administrative fees, and fees required by the arbitrators. Finally, the paragraph informs the parties that if a party uses litigation to enforce the arbitration provision, the court will award such party its court costs and reasonable attorneys’ fees.
On page eight of nine of the agreement, both plaintiffs’ signatures appear as well as the signature of an officer of the defendant. The plaintiffs’ signatures are dated February 13, 2010, and the defendant’s officer’s signature is dated March 4, 2010. Although the parties did not sign the agreement on the same date, having both parties’ signature appear provides indicia of mutual assent. Further, there is no evidence of fraud. The court is satisfied that a valid agreement to arbitrate exists. “One who is about to sign a contract has a duty to read that contract first.” Schillachi v. Flying Dutchman Motorcycle Club, 751 F. Supp. 1169, 1174 (E.D. Pa. 1990), aff’d 944 F.2d 898 (3d Cir. 1991). Both plaintiffs testified that they were excited to build their house and that this was a significant decision, but did not attempt to read the documents placed in front of them or to ask for time to review them. They had a duty to read the contract, and their failure to do so will not excuse their ignorance of its provisions.
Next, the plaintiffs argue that the agreement constitutes a contract of adhesion because they could not negotiate with the defendant and had no choice but to sign it. “An adhesion contract is a standard-form contract prepared by one party, to be signed by the party in a weaker position, usually a consumer, who adheres to the contract with little choice about the terms.” Chepkevich v. Hidden Valley Resort, L.P., 2 A.3d 1174, 1190 (Pa. 2010) (quotations, citations, and internal quotation marks omitted). Upon a review of the evidence, the court agrees that the agreement *493 is indeed a contract of adhesion. The plaintiffs could either have signed the agreement or not signed. The agreement was a standard form contract, and Williams did not have the authority to accept an agreement with a change to its terms. This does not end the inquiry. Although the agreement is one of adhesion, this does not automatically render it to be unconscionable.
“Once a contract is deemed to be one of adhesion, its terms must be analyzed to determine whether the contract as a whole, or specific provisions of it are unconscionable.” Todd Heller, Inc. v. UPS, 754 A.2d 680, 700 (Pa. Super. 2000). “[A] contract or term is unconscionable, and therefore voidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it.” Bayne v. Smith, 965 A.2d 265, 267 (Pa. Super. 2009) (referencing Restatement (Second) of Contracts § 208 (1981)). It is for the court to determine whether a contract or a provision is unconscionable. Id. Courts will not hold a contract to be unconscionable merely because of a disparity in bargaining power. See Denlinger Inc. v. Dendler, 608 A.2d 1061, 1067 (Pa. Super. 1992).
An unconscionable contract is, “1) that the contractual terms are unreasonably favorable to the drafter and 2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions.” H&R Block Easter Tax Services v. Zarilla, 69 A.3d 246, 250 (Pa. Super. 2013). First, the court notes that the plaintiffs are not wholly ignorant consumers. Although plaintiff John E. Riggans, III, has only a high school level education, in his profession he regularly reads manuals to use machinery properly. Plaintiff Samantha Riggans is a registered nurse who is employed through Jameson Hospital. She acknowledged the importance of maintaining written records. And the plaintiffs understood that they were signing an agreement *494 for the construction of their home. The court can infer that the plaintiffs understood the importance of the documents they were signing. There is no evidence that the plaintiffs discussed, challenged, or negotiated the agreement or any provision of the agreement. Although Williams testified that she was not authorized to close a deal with potential buyers who object to a term of the contract, she also testified that there was a procedure through which a contract could be approved by management with alternate terms. Additionally, the plaintiffs were free to walk away and not sign the agreement and to pursue a different company for the construction of their home. In fact, the plaintiffs intended to visit another company and decided not to revisit the office when they discovered the office was closed. Based upon these facts, the plaintiffs cannot establish that they did not have a meaningful choice on the acceptance of the agreement’s provisions.
Additionally, the arbitration provision does not unfairly favor the drafter. The arbitration provision mandates that each party is bound by it. If the parties cannot agree on a location, the arbitrator will decide the location. The parties can attempt to settle their disputes without waiving arbitration. The parties will share the costs of arbitration, and if any rule requires the defendant to pay more than half the fees, it will do so. Additionally, the arbitration process will be controlled by the American Arbitration Association, or similar arbitration company. And, as the arbitration process has commenced in this case, the arbitration proceeding is occurring in Lawrence County, where the plaintiffs live.
Plaintiffs maintain that the language in the arbitration provision requires that all claims with regard to the structure of the home be brought at one time and any subsequent arbitration will be barred. Although this is not an absurd interpretation, the court disagrees with the *495 plaintiffs’ reading of the arbitration clause. A plain reading of the arbitration provision provides that all claims must be brought through the arbitration process; however, if a claim arises after the initial arbitration proceeding, the party would have to initiate additional arbitration proceedings. The defendant concedes this interpretation. Additionally, the plaintiffs stress that the imposition of the costs of arbitration is unduly favorable to the defendant. The court does not agree. Although the fees may be high, they do not seem excessive in light of the costs of litigation. Based upon these facts, the court finds that the agreement is not unconscionable and a valid arbitration provision exists.
Lastly, prior to compelling arbitration, the court must determine whether the dispute involved is within the scope of the arbitration provision. As stated above, the plaintiffs claims are based upon breaches of contract and warranty with regard to the construction of their homes. The arbitration provision explicitly includes these claims.
As a result, the disputes are within the scope of the arbitration provision. Based upon the foregoing, the plaintiffs are required to resolve their disputes with the defendant through the arbitration process. The plaintiffs’ petition for injunctive relief is hereby denied. The defendant’s preliminary objections are hereby sustained.
ORDER OF COURT
And now, this 18th day of March, 2015, this case being before the court on January 22, 2015 for a hearing on the petition for injunctive relief filed by the plaintiffs and oral argument on preliminary objections filed by the defendant’s regarding, with Daniel I. Herman Esquire, appearing and representing the plaintiffs and Jeffrey M. Olszewski, Esquire, appearing and representing the defendant, and after a complete and thorough review of *496 the applicable record, the court hereby orders and decrees as follows:
1. The plaintiffs’ petition for injunctive relief is hereby denied pursuant to the attached opinion.
2. The defendant’s preliminary objections are hereby sustained pursuant to the attached opinion.
3. The plaintiffs are hereby ordered to submit to arbitration for the adjudication of their claims against the defendant, as provided in the February 13, 2010, agreement.
4. The prothonotary shall properly serve notice of this order and attached opinion upon counsel of record; and if a party has no counsel, then upon said party at their last known address as contained in the court’s file.

. Plaintiff Samantha Riggans testified that that they were to get *486 married on August 24,2010, while John E. Riggans, III, testified that the date was September 24,2010.