IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Kipp Pope, R.Ph.,       :
                            Petitioner    :
                                         :
        v.                          : No. 75 C.D. 2024
                                         : Submitted: April 8, 2025
State Board of Pharmacy,       :
                            Respondent  :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                         FILED: July 8, 2025

Brandon Kipp Pope, R.Ph. (Pope) petitions for review of the corrected final adjudication and order mailed December 29, 2023, by the State Board of Pharmacy (Board), which suspended his pharmacy license indefinitely for a period of at least three years retroactive to January 4, 2023. Pope challenges the Board's conclusion that he violated a consent agreement and order (Agreement) suspending his license but staying the suspension in favor of probation provided he complied with all terms and conditions of the Agreement. After careful review, we affirm.

## BACKGROUND

Pope first received his pharmacy license in August 2013. Reproduced Record (R.R.) at 344.[1] In June 2019, Pope began participating in the Professional Health Monitoring Program (Program) because of substance abuse issues. *Id.* Pope tested positive for alcohol in July 2019. *Id.* at 345. As a result, Pope entered into a Case Management Plan Modification/Extension (Plan Extension) in September 2019 that extended his monitoring under the Program. *Id.* The Board approved the Agreement on October 22, 2019, suspending Pope's license but staying the suspension in favor of probation as described above. *Id.* at 219-21, 243. Pope tested positive for alcohol in January 2020 and entered into an additional Plan Extension in February 2020. *Id.* at 346.

The Board's order approving the Agreement expressly incorporated the terms of Paragraph 7, which provides as follows, in relevant part:

> **ABSTENTION**
>
> (22) [Pope] shall completely abstain from the use of controlled substances, caution legend (prescription) drugs, mood altering drugs or drugs of abuse **including alcohol in any form**,[2] except under the following conditions:
>
>> (i) [Pope] is a bona fide patient of a licensed health care practitioner who is aware of [Pope's] impairment and participation in the [Program];
>>
>> (ii) Such medications are lawfully prescribed by [Pope's] treating practitioner and approved by the [Program] case manager;

---

[1] Pope's reproduced record does not include page numbers, so we use electronic pagination in this opinion.

[2] It is noteworthy this clause is in bold font in the original.

(iii) Upon **receiving** the medication, [Pope] must provide to the [Program], **within forty-eight (48) hours by telephone and within five (5) days in writing**, the name of the practitioner prescribing the drug, the illness or medical condition diagnosed, the type, strength, amount and dosage of the medication and a signed statement consenting to the release of medical information from the prescribing practitioner to the [Program] or its designated representative for the purpose of verification; and

(iv) Upon **refilling** a medication, [Pope] must provide to the [Program], **within forty-eight (48) hours by telephone and within five (5) days in writing**, the name of the practitioner prescribing the drug, the illness or medical condition diagnosed, the type, strength, amount and dosage if the medication and a signed statement consenting to the release of medical information from the prescribing practitioner to the [Program] or its designated representative for the purpose of verification.

. . . .

## DRUG TESTING

(23) [Pope] shall submit to random unannounced and observed drug and alcohol tests (drug testing), inclusive of bodily fluid, breath analysis, hair analysis, or another procedure as selected by the [Program], for the detection of substances prohibited under this Agreement as recommended by the treatment provider and as directed by the [Program].  A positive, adulterated or substituted result on a drug test shall constitute an irrefutable violation of this Agreement unless [Pope] has complied with the provisions of this Agreement pertaining to the use of drugs.  Failure to provide a specimen or a specimen of sufficient quantity for testing when requested will be considered a violation of this Agreement.

. . . .

(25) [Pope] shall avoid all substances containing alcohol, including alcohol in food or beverages, medications, chemical solutions, cleaning solutions, gasoline, hand sanitizers, or other skin preparations. Incidental use of alcohol will not be accepted as a valid explanation for

> a positive drug test unless [Pope] has complied with the provisions of this Agreement pertaining to the use of drugs as set forth in the Abstention Section above.

R.R. at 228-30 (emphasis in original).

The Bureau of Professional and Occupational Affairs (Bureau) filed a Petition for Appropriate Relief on January 4, 2023. The Bureau alleged Pope violated the terms of Paragraph 7(e)(22) by testing positive for alcohol for a third time on July 27, 2022. The Bureau requested a preliminary order vacating the stay of suspension, terminating the period of probation, and suspending Pope's pharmacy license. The Board's Probable Cause Screening Committee issued a preliminary order granting the Bureau's requested relief, dated January 4, 2023.

Pope filed an answer and new matter on February 6, 2023. Pope conceded he tested positive for alcohol but alleged the positive test may have resulted from taking kratom, which he described as an over-the-counter pain medication. Pope attached a letter from a physician assistant, who stated Pope was taking kratom for pain relief related to an injury. Further, Pope suggested his positive test may have resulted from consuming kefir. Pope contended the Agreement did not prohibit kratom or kefir. The Bureau filed an answer to Pope's new matter.

A hearing took place before a hearing examiner on April 7, 2023. In relevant part, Pope maintained he takes his recovery seriously, regularly attends Alcoholics Anonymous meetings, and was nearing completion of the Program at the time of the positive test. R.R. at 132, 141-44. Pope acknowledged he was prohibited from using alcohol and testified he did not drink alcoholic beverages before his positive test. *Id.* at 131-32, 152-54. Rather, Pope testified he consumed kratom, kefir, and apple cider vinegar, which may have been responsible for the positive result. *Id.* at 132. Pope testified he did not realize the kratom contained alcohol until he received the positive result and reviewed the ingredients. *Id.* at 135-36, 140. **Pope agreed he read the**

**label on the kratom he was using, which indicated that "you have to be over 21" to drink it, and that it contained "2.5 percent grain alcohol."**[3] *Id.* at 140, 151-52 (emphasis added).

Pope testified he underwent hip replacement surgery in September 2022. R.R. at 131. Pope explained he began consuming kratom to treat his hip pain because he did not want to take an opioid medication. *Id.* at 132, 139. Relatedly, Pope explained he consumed kefir and apple cider vinegar because he "was trying to be as healthy as possible" before surgery. *Id.* at 147, 150-51. When asked whether kratom was recommended to him by a medical professional, Pope maintained he made his doctor "aware of it," and the doctor did not object. *Id.* at 133-35. Pope insisted he did not realize he should report his kratom use to the Program because it was an over-the-counter medication, although he testified he did mention it to a person named Theresa from "Secundum Artem Reaching Pharmacists with Help," which the record indicates is a peer assistance program involved in his monitoring. *Id.* at 143, 219, 223

Meanwhile, Pope's Program case manager, Erik Omlor (Omlor), testified he did not approve the use of kratom, kefir, or apple cider vinegar, had not been aware Pope was consuming those products, and never received a prescription. R.R. at 97-98. He described kratom as an unregulated "substance of concern" that was under investigation by the Food and Drug Administration. *Id.* at 96, 104, 114-16. Omlor

---

[3] The record contains color pictures depicting the kratom Pope used, but the writing on the bottles is illegible. *See* R.R. at 264-69. Nonetheless, Pope testified regarding the writing on the bottles.

explained he offered Pope an additional Plan Extension after the most recent positive test for alcohol, but Pope declined.[4] *Id.* at 100.

The hearing examiner mailed a proposed adjudication and order on May 24, 2023, which suspended Pope's pharmacy license indefinitely, retroactive to January 4, 2023, with a minimum suspension of three years. The hearing examiner reasoned Pope violated Paragraph 7(e)(22) of the Agreement by consuming unprescribed and unapproved medication and foods containing alcohol. The hearing examiner further observed Paragraph 7(e)(25) directed Pope to avoid alcohol in medications, food, or beverages and prohibited incidental use of alcohol if Pope failed to comply with the conditions of Paragraph 7(e)(22). The hearing examiner reasoned Pope "committed himself to a heightened responsibility and vigilance" by entering into the Agreement and should have discerned the alcohol content of products he was consuming. R.R. at 282-83. Despite mitigating evidence, the hearing examiner concluded suspension of Pope's license as specified in the Agreement was the appropriate sanction, citing his "careless lack of appreciation for the strictures of [Program] supervision." *Id.* at 283.

The Board issued a notice of intent to review on May 30, 2023, and the parties submitted briefs. The Board issued a final adjudication and order mailed December 21, 2023, followed by a corrected final adjudication and order mailed December 29, 2023.[5] The Board adopted the hearing examiner's findings of fact and conclusions

---

[4] It is not entirely clear from the record but implied that the Bureau would not have filed its Petition for Appropriate Relief if Pope had agreed to an additional Plan Extension.

[5] The Board issued a corrected final adjudication and order because its original final adjudication and order did not include the hearing examiner's proposed adjudication and order as an attachment. We note letters are missing throughout the Board's final adjudication and order and corrected final adjudication and order. *E.g.*, the letter "U" is missing from the word "DISCUSSION" in both **(Footnote continued on next page…)**

of law, while rejecting Pope's arguments. Pertinently, the Board found no merit to Pope's argument that Paragraph 7(e)(22) of the Agreement should be interpreted to prohibit alcohol only when it is contained in a "drug of abuse," concluding Paragraph 7(e)(22) unambiguously prohibits alcohol consumption in any form. The Board also found no merit to Pope's argument that expert testimony was necessary to establish alcohol is a "drug of abuse," explaining this is a commonly understood fact that Pope acknowledged by entering into the Agreement. The Board concluded suspension of Pope's license was appropriate, despite his insistence the hearing examiner failed to consider mitigating evidence, because the Agreement provided for that sanction, and the mitigating evidence did not justify a lesser sanction.[6]

Pope timely filed a petition for review in this Court. Pope maintains the Board misinterpreted the Agreement because Paragraph 7(e)(22) prohibits "drugs of abuse" containing alcohol rather than alcohol in any form. Additionally, Pope argues expert testimony was necessary to support the Board's conclusion that alcohol or products containing alcohol are "drugs of abuse." Pope contends the Board improperly relied on its own expertise to make this determination. Pope asserts the Board should not have considered Paragraph 7(e)(25), which directed him to avoid medication, foods, and beverages containing alcohol, because the Bureau did not allege a violation of its terms. To the extent the Board could consider Paragraph 7(e)(25), Pope contends his alcohol consumption was permissible because it was unknowing and incidental.

Moreover, Pope challenges the three-year suspension of his pharmacy license, reasoning that sanction is not required under the Agreement, is too severe, and fails

---

documents. R.R. at 321, 333. Such a discrepancy is not satisfactory and should be remedied moving forward.

[6] The Board suspended Pope's authorization to administer injectables in addition to his pharmacy license.

to take mitigating evidence into account. Pope argues he was unaware kratom, kefir, and apple cider vinegar contained alcohol. In addition, Pope argues he was nearing completion of the Program, maintaining sobriety, and using kratom as an alternative to opioids. Pope maintains suspending his license would not protect the profession because he was no longer employed as a pharmacist at the time of his positive test. He contends the Board erred by suspending his license because it did not offer him an alternative form of pain management.

## DISCUSSION

This Court reviews the Board's order for violations of Pope's constitutional rights, violations of practice and procedure, and other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the decision. *Id.* Regarding the Board's imposition of sanctions, "our review . . . is limited to determining 'whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions.'" *Knelly v. Pa. Dep't of Health*, 307 A.3d 808, 816 (Pa. Cmwlth. 2023) (quoting *Goldberger v. State Bd. of Accountancy*, 833 A.2d 815, 817 n.1 (Pa. Cmwlth. 2003)). Finally, Pope's arguments require us to interpret the terms of the Agreement. This Court has recognized consent agreements are "akin to a contract" and are interpreted using contract principles. *See Ghaderi v. State Bd. of Osteopathic Med.*, 302 A.3d 240, 246 n.9 (Pa. Cmwlth. 2023). The objective when interpreting a contract is to discern and give effect to the intent of the parties. *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009).

As an initial matter, the only reasonable interpretation of Paragraph 7(e)(22)'s "drugs of abuse including alcohol in any form" language is that it prohibits any and all consumption of alcohol, including alcohol contained in kratom, kefir, and apple

8

cider vinegar. Under Pope's preferred interpretation, he would be permitted to drink as much alcohol as he wants, so long as it is not contained in a "drug of abuse." Just as concerning, he would be permitted to use certain "drugs of abuse," so long as they do not contain alcohol. This result would be absurd and cannot have been the intent of the Agreement. *See Clairton Slag, Inc. v. Dep't of Gen. Servs.*, 2 A.3d 765, 773 (Pa. Cmwlth. 2010) ("A contract should not be interpreted in a way that leads to an absurdity or renders the contract ineffective to accomplish its purpose.").

We also see no basis for Pope's claim that expert testimony was necessary to establish alcohol or products containing alcohol are "drugs of abuse." We agree that a board "cannot rely on the medical expertise of its members." *Stoner v. Bureau of Pro. & Occupational Affs., State Bd. of Med.*, 10 A.3d 364, 376 (Pa. Cmwlth. 2010). Paragraph 7(e)(22) describes alcohol as a "drug of abuse," however, so there was no reason to present expert testimony. Further, as the Board observed, the existence of alcohol abuse is so widely known that expert testimony would be inappropriate. *See Commonwealth v. King*, 721 A.2d 763, 781 (Pa. 1998) ("Where the issue involves a matter of common knowledge, expert testimony is inadmissible.").

Paragraph 7(e)(25) bolsters our determination, in that it prohibits consumption of alcohol in food or beverages. Pope is correct the Bureau did not allege he violated Paragraph 7(e)(25), but contracts should be read as a whole, and this Court may not interpret one provision of a contract so that it nullifies another. *See Commonwealth ex rel. Kane v. UPMC*, 129 A.3d 441, 463-64 (Pa. 2015). Paragraph 7(e)(25) would be meaningless if Paragraph 7(e)(22) permitted Pope to use alcohol not contained in a "drug of abuse" as he contends. Significantly, the Board did not conclude Pope violated Paragraph 7(e)(25), and Paragraph 7(e)(22) was the only violation specified in the conclusions of law.

9

Ultimately, Pope conceded at the hearing that he was not allowed to consume alcohol and maintained he did not realize the products he was consuming had alcohol in them. To the extent Paragraph 7(e)(25) applies, Pope argues his consumption of alcohol was permissible because it was unknowing and incidental. Under Paragraph 7(e)(25), incidental use of alcohol is not a valid explanation for a positive test unless Pope complied with the provisions of Paragraph 7(e)(22) regarding drug use. Pope failed to comply with Paragraph 7(e)(22) for the reasons discussed above.

Regarding the Board's three-year suspension of Pope's pharmacy license, the Agreement provided specifically for this sanction in Paragraph 7(f):

> (8) If the Board of hearing examiner after the formal hearing makes a determination against [Pope], a final order will be issued sustaining the suspension of [Pope's] license and imposing any additional disciplinary measures deemed appropriate.
>
> . . . .
>
> (10) If . . . the Board or the hearing examiner makes a determination against [Pope] sustaining the suspension of [Pope's] license, after at least **three (3)** years of active suspension and any additional imposed discipline, [Pope] may petition the Board for reinstatement based upon an affirmative showing that [Pope] has at least **thirty-six (36)** months of sustained documented recovery, an evaluation by a treatment provider approved by the [Program] that [Pope] is fit to safely practice the profession, and verification that [Pope] has abided by and obeyed all laws of the United States, the Commonwealth of Pennsylvania and its political subdivisions, and all rules and regulations pertaining to the practice of the profession in this Commonwealth.

R.R. at 236-37 (emphasis in original).

Despite this, the Board considered Pope's mitigating evidence and concluded it did not justify a lesser sanction. The record indicates this was Pope's third positive test for alcohol in four years. Moreover, Pope's positive test was not the result of an

10

isolated incident but rather resulted from his deliberate and repeated consumption of products containing alcohol, most notably kratom. Pope insists he did not know the products contained alcohol but conceded at the hearing that the kratom indicated "you have to be over 21" to drink it on the bottle and listed alcohol as an ingredient. R.R. at 136, 140, 151-52. The age restriction on the kratom should have alerted Pope that there may be something problematic about the product and prompted him to review the ingredients.[7] We see no reason to disturb the Board's order on the basis of mitigating evidence.[8]

Pope supports his argument that the Board failed to offer an alternative form of pain management by comparing himself to individuals who were allegedly denied

---

[7] Even without the prompt, in other words, even without the age and ingredient labels, we agree with the hearing examiner that:

> By entering into this [A]greement, [Pope] committed himself to a heightened responsibility and vigilance in avoiding "all substances containing alcohol." To safeguard the protection of the public, the [Program] needs to reliably ensure that [Pope] is totally abstinent from alcohol, and the only way to reliably do that is to prohibit [Pope] from using any substance that could affect alcohol testing. This case illustrates the wisdom of this requirement, since innocuous substances ranging from vinegar to fermented camel milk contain alcohol and can result in a positive test. By failing to ascertain the alcohol content of the products that he was using on a daily basis, [Pope] failed to comply with the terms of the [A]greement.

R.R. at 353-54.

[8] Although Pope contends his circumstances are like those in *Kenney v. Bureau of Professional and Occupational Affairs, State Board of Pharmacy*, 203 A.3d 421 (Pa. Cmwlth. 2019), we determine the two matters are distinguishable. In *Kenney*, we faulted the Board for denying a petition for early termination of probation because, in relevant part, the petitioner's consent agreement allowed for modifications of probation and the Board improperly delegated its decision to the Program, which had "a rigid policy" of opposing all early termination requests. *Id.* at 428-29. In this matter, the Board imposed a sanction consistent with Pope's Agreement and independently considered the mitigating evidence. We see no indication that the Board improperly delegated its decision to the Program.

11

the ability to use prescription medications to treat opioid use disorder in violation of the Americans with Disabilities Act of 1990.[9] *See* Pope's Br. at 15-17. The record does not show the Board prevented Pope from using prescription medications to treat opioid use disorder. Rather, it shows Pope attempted to self-medicate hip pain with an unprescribed substance containing alcohol and never requested approval from the Program. We cannot conclude the Board erred or abused its discretion in this regard.

## CONCLUSION

It is laudable that Pope attempted to make healthy lifestyle choices and avoid the use of opioid medications, particularly given his history of substance abuse and the opioid epidemic in this country. However, if he wanted to ingest a medication that contained alcohol, he should have sought approval from the Program manager. Simply put, Pope violated the Agreement, which prohibited consumption of alcohol in any form. Although the Board considered the mitigating evidence, it determined within its discretion that the evidence did not justify any lesser sanction than the three-year suspension specified in the Agreement. Thus, we affirm the Board's corrected final adjudication and order mailed December 29, 2023.

_____
STACY WALLACE, Judge

---

[9] 42 U.S.C. §§ 12101-12213.

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brandon Kipp Pope, R.Ph.,        :
                    Petitioner     :
                                  :
       v.                      : No. 75 C.D. 2024
                                  :
State Board of Pharmacy,        :
                  Respondent   :

## **O R D E R**

**AND NOW**, this 8th day of July 2025, the corrected final adjudication and order of the State Board of Pharmacy, mailed December 29, 2023, is **AFFIRMED**.

_____
STACY WALLACE, Judge

Brandon Kipp Pope, R.Ph.,     :
           Petitioner     :
                        :
       v.                   :     No. 75 C.D. 2024
                        :     Submitted: April 8, 2025
State Board of Pharmacy,     :
           Respondent    :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE STACY WALLACE, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

DISSENTING OPINION
BY SENIOR JUDGE LEAVITT        FILED:

Brandon Kipp Pope, R.Ph. (Pope), at most, committed a technical and unknowing violation of the consent agreement and order (consent order). As such, the State Board of Pharmacy's (Board) *indefinite* suspension of his pharmacy license was manifestly unreasonable. With respect, I dissent from the majority's decision to affirm the Board.

Pope was participating in the Board's Professional Health Monitoring Program (PHMP) because of his alcohol and opiate use disorder. In that program, Pope was required to abstain from the illegal use of controlled substances and any use of alcohol.

While under PHMP supervision, Pope consumed kratom, kefir, and apple cider vinegar. In consultation with his doctor, Pope used kratom, an herbal supplement, to manage hip pain for which he had surgery in September of 2022. The kratom contained 2.5% alcohol. For health reasons, Pope consumed kefir, a fermented milk drink, and apple cider vinegar, a fermented apple product; both

products contain a negligible amount of alcohol. None of these products are "classified or generally recognized as drugs of abuse[.]" Proposed Adjudication and Order at 12.

The Board "exercises considerable discretion in policing its licensees." *Ake v. Bureau of Professional and Occupational Affairs, State Board of Accountancy*, 974 A.2d 514, 519 (Pa. Cmwlth. 2009). The "weight the Board assigns to evidence offered to mitigate the severity of a penalty is a matter within its discretion." *Burnworth v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 589 A.2d 294, 296 (Pa. Cmwlth. 1991). This Court has explained as follows:

> While [this Court] is required to correct abuses of discretion in manner or degree of penalties imposed, absent a manifestly unreasonable exercise of judgment, we will not substitute our discretion for that of the Board, an administrative body endowed with expertise in matters subject to its jurisdiction.

*Foose v. State Board of Vehicle Manufacturers, Dealers and Salespersons*, 578 A.2d 1355, 1359 (Pa. Cmwlth. 1990).

The consent order required Pope to "abstain from the use of controlled substances, . . . including alcohol in any form[.]" Reproduced Record at 228.[1] It cannot be that the consent order intended to proscribe the use of rubbing alcohol to treat a skin laceration. Likewise, the language cannot mean that Pope could not apply cologne or put windshield wiper fluid in his vehicle, which products also contain alcohol. Kratom, kefir, and apple cider vinegar are not listed in the consent order as prohibited, and they are not products generally associated with alcoholic beverages or "controlled substances." They are not sold at state liquor stores.

---

[1] The Reproduced Record does not comply with Pennsylvania Rule of Appellate Procedure 2173, which requires pages be separately numbered with Arabic figures followed by a small "a." *See* Pa.R.A.P. 2173.

This Court is required to construe any ambiguity against the Board, as drafter of the document. *See generally Sun Company, Inc. (R&M) v. Pennsylvania Turnpike Commission*, 708 A.2d 875, 878-79 (Pa. Cmwlth. 1988) ("[A]ny ambiguous language in a contract is construed against the drafter and in favor of the other party if the latter's interpretation is reasonable."). The consent order's overbroad proscription against the use of alcohol "in any form" created an ambiguity that must be construed against the Board. As such, the consent order did not prohibit Pope from consuming kratom, kefir, and apple cider vinegar.

Pope's choice not to use opioid medication to treat his hip pain shows an intent to comply with the consent order. His consumption of kratom, kefir, and apple cider vinegar was for medical and health purposes. The record further shows that Pope took his recovery seriously by attending Alcoholics Anonymous meetings; regularly communicating with his sponsor; and serving as the designated driver to social events where beer, wine, and cocktails were available. Pope was close to completing the program when the Board initiated its enforcement action.

The Board credited Pope's testimony that he did not know that kratom, kefir, and apple cider vinegar contained alcohol. This finding, in combination with Pope's testimony about his recovery, as well as the *de minimis* nature of the violation, do not support the Board's chosen discipline. There was no evidence that Pope ever lost his sobriety, which was the reason for the consent order. *See* Proposed Adjudication and Order at 13 (Pope's violation described as a "careless lack of appreciation for the strictures of PHMP supervision"). For these reasons, the Board's decision to impose an *indefinite* suspension for consumption of kratom, kefir, and apple cider vinegar constitutes "a manifestly unreasonable exercise of judgment." *Foose*, 578 A.2d at 1359.

I would vacate the Board's imposition of an indefinite suspension of Pope's pharmacy license and remand the matter to the Board for imposition of a penalty commensurate with the consumption of kratom, kefir, and apple cider vinegar, which were not known or reasonably understood by Pope to be proscribed by the consent order.

_____
MARY HANNAH LEAVITT, President Judge Emerita

MHL-4